OPINION
By the Court,
Douglas, J.:
In this opinion, we consider the constitutionality of NRS 295.009, which places a single-subject requirement on initiative petitions, and whether the initiative petition at issue in this appeal, the Nevada Property Owners’ Bill of Rights, violates that requirement. We conclude that NRS 295.009 is constitutional and that because the Nevada Property Owners’ Bill of Rights embraces more than one subject, the initiative violates this statute. Even so, strong public policy favors upholding the initiative power whenever possible, and NRS 295.009 does not prescribe a remedy for single-subject requirement violations. As the initiative includes a severa-bility clause and facially and unequivocally pertains to a primary subject — eminent domain — we are compelled to sever sections 1 and 8, which do not pertain to eminent domain, in lieu of removing the entire initiative from the ballot.
Further, we confirm that initiatives proposing constitutional amendments must propose policy and not direct administrative details. Sections 3, 9, and 10 of the initiative violate this threshold requirement and therefore must be stricken. The rest of the initiative, consisting of sections 2, 4, 5, 6, 7, 11, 12, 13 and 14 shall proceed to the ballot.

*899
BACKGROUND

In September 2005, respondents People’s Initiative to Stop the Taking of Our Land (PISTOL), Don Chairez, Kermitt Waters, and Autumn Waters (collectively “the proponents”) filed an initiative petition entitled “Nevada Property Owners’ Bill of Rights” with the Secretary of State for placement on the November 7, 2006 ballot. The initiative seeks to amend Article 1 of the Nevada Constitution by adding a new section, section 22, consisting of 14 separate provisions. The initiative’s provisions are as follows:
1. All property rights are hereby declared to be fundamental constitutional rights and each and every right provided herein shall be self-executing.
2. Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent domain proceeding from one private party to another private party. In all eminent domain actions, the government shall have the burden to prove public use.
3. Unpublished eminent domain judicial opinions or orders shall be null and void.
4. In all eminent domain actions, prior to the government’s occupancy, a property owner shall be given copies of all appraisals by the government and shall be entitled, at the property owner’s election, to a separate and distinct determination by a district court jury, as to whether the taking is actually for a public use.
5. If a public use is determined, the taken or damaged property shall be valued at its highest and best use without considering any future dedication requirements imposed by the government. If private property is taken for any proprietary governmental purpose, the property shall be valued at the use to which the government intends to put the property, if such use results in a higher value for the land taken.
6. In all eminent domain actions, just compensation shall be defined as that sum of money, necessary to place the property owner back in the same position, monetarily, without any governmental offsets, as if the property had never been taken. Just compensation shall include, but is not limited to, compounded interest and all reasonable costs and expenses actually incurred.
7. In all eminent domain actions where fair market value is applied, it shall be defined as the highest price the property would bring on the open market.
*900 8. Government actions which result in substantial economic loss to private property shall require the payment of just compensation. Examples of such substantial economic loss include, but are not limited to, the down zoning of private property, the elimination of any access to private property, and limiting the use of private air space.
9. No Nevada state court judge or justice who has not been elected to a current term of office shall have the authority to issue any ruling in an eminent domain proceeding.
10. In all eminent domain actions, a property owner shall have the right to preempt [sic] one judge at the district court level and one justice at each appellate court level. Upon prior notice to all parties, the clerk of that court shall randomly select a currently elected district court judge to replace the judge or justice who was removed by preemption [sic].
11. Property taken in eminent domain shall automatically revert back to the original property owner upon repayment of the original purchase price, if the property is not used within five years for the original purpose stated by the government. The five years shall begin running from the date of the entry of the final order of condemnation.
12. A property owner shall not be liable to the government for attorney fees or costs in any eminent domain action.
13. For all provisions contained in this section, government shall be defined as the State of Nevada, its political subdivisions, agencies, any public or private agent acting on their behalf, and any public or private entity that has the power of eminent domain.
14. Any provision contained in this section shall be deemed a separate and freestanding right and shall remain in full force and effect should any other provision contained in this section be stricken for any reason.
After the necessary signatures were gathered and verified, the Secretary of State determined that the initiative had qualified for placement on the November 2006 ballot. In reviewing the initiative, the Secretary was required to determine whether it complied with Nevada’s single-subject requirement, NRS 295.009.[2] The Secretary conducted a “broad” review and concluded, apparently without any analysis, that the initiative “arguably complied with the single subject rule.” Appellants, a collection of individuals and government entities opposed to the initiative, then filed a complaint in district court seeking declaratory and extraordinary relief to pre *901 vent the initiative from being placed on the ballot. The district court denied all requested relief, ruling that the initiative encompasses only a single subject and is therefore not disqualified from appearing on the ballot. This appeal followed.

DISCUSSION

NRS 295.009, Nevada’s recently enacted single-subject requirement for initiatives, is the focal point in this appeal. As the statute’s constitutionality has been called into question, we first address this threshold issue. We then discuss the statute’s application to the initiative at hand and the remedy, in this case, for a statutory violation. Finally, we analyze the initiative under the threshold requirement that it propose policy.
A. Standard of review
This court reviews a district court’s decision denying declaratory relief made in the absence of any factual dispute de novo.[3] And although this court generally reviews a district court’s denial of a request for extraordinary relief under an abuse of discretion standard,[4] when the petition involves questions of statutory construction, including the meaning and scope of a statute, we review the resolution of those questions de novo.[5]
B. NRS 295.009 ‘'s single-subject requirement is constitutional
During the 2005 legislative session, the Legislature enacted NRS 295.009, which, among other things, places a single-subject requirement on initiative petitions. Subsection (l)(a) of the statute provides that “[e]ach petition for initiative . . . must . . . [ejmbrace but one subject and matters necessarily connected therewith and pertaining thereto.” Subsection 2 further defines what one subject encompasses.
The proponents challenge the constitutionality of NRS 295.009, under both the Nevada and United States Constitutions. They contend that the Nevada Constitution does not provide the Legislature with the authority to enact a law restricting ballot initiatives to a *902 single subject and that the single-subject requirement places improper limitations on political speech in violation of the First Amendment of the United States Constitution. We conclude that the Legislature properly enacted NRS 295.009 and that since the statute does not place unconstitutional limits on political speech, it does not violate the First Amendment.
1. Nevada Constitution
Nevada Constitution Article 19, Section 2 provides that “the people” reserve unto themselves the power to propose and enact statutes, amendments to statutes, and amendments to the Nevada Constitution by initiative petition. Article 19, Section 5, however, provides that “the legislature may provide by law for procedures to facilitate the operation of [Article 19’s provisions].” Thus, the Nevada Constitution explicitly authorizes the Legislature to enact laws regulating the initiative process, so long as those laws facilitate the provisions of Article 19. The proponents fail to address or acknowledge Article 19, Section 5 and its express grant of authority to the Legislature.
By limiting petitions to a single subject, NRS 295.009 facilitates the initiative process by preventing petition drafters from circulating confusing petitions that address multiple subjects. This goal was endorsed by the Tenth Circuit Court of Appeals in evaluating the constitutionality of Colorado’s single-subject requirement in Campbell v. Buckley.[6] As the Campbell court noted, “single subject . . . requirements serve to prevent voter confusion and promote informed decisions by narrowing the initiative to a single matter and providing information on that single matter to the voter.’ ’[7] The Campbell court concluded that single-subject requirements for initiative petitions do not impermissibly limit the people’s ability to legislate or amend the constitution, noting that a second subject that might have been included in the first petition can be addressed by creating a second petition.[8] And, although the United States Supreme Court has not addressed the constitutionality of single-subject requirements, in an opinion addressing the constitutionality of several Colorado statutes regulating the initiative process, the Court, in dictum, classified Colorado’s single- *903 subject requirement as a “process measure[ ]” that facilitates “efficiency, veracity, or clarity” in the initiative process.[9]
NRS 295.009’s single-subject requirement facilitates the provisions of Article 19. Accordingly, under Article 19, Section 5, the Legislature had the authority to enact this requirement for initiative petitions.[10] The challenge to this statute’s constitutionality under the Nevada Constitution therefore necessarily fails.[11]
2. United States Constitution
The proponents also contend that the single-subject requirement places an unconstitutional limitation on core political speech, under the First Amendment of the United States Constitution, requiring a strict scrutiny analysis. Instead, however, a more flexible balancing test applies, and under this test, the single-subject requirement does not run afoul of the First Amendment.
a. The constitutionality of the single-subject requirement must be evaluated under the flexible balancing test, not strict scrutiny
In Burdick v. Takushi,[12] the Supreme Court expressly rejected the contention that any law imposing a burden on the right to vote is subject to strict scrutiny. In upholding Hawaii’s ban on voting for write-in candidates against arguments that the ban violated the First and Fourteenth Amendments, the Court held that a more flexible standard, rather than strict scrutiny should be applied.[13]
*904 Under this flexible standard, a court considering a challenge to a state election law must balance the character and magnitude of the asserted injury to the protected right the challenger seeks to vindicate against the precise interests advanced by the state as justifying the burden imposed by its rule, while taking into consideration the extent that those interests require the burdening of the challenger’s rights.[14] The rigorousness of the inquiry into the challenged law’s propriety depends on the extent to which the law burdens First and Fourteenth Amendment rights.[15] When these rights are severely restricted, the regulation must be narrowly drawn so as to advance a compelling state interest.[16] When a state election law imposes only reasonable, nondiscriminatory restrictions on these rights, the state’s important regulatory interests are generally sufficient to justify the restrictions.[17]
We have adopted this flexible standard in reviewing a statute that limited the time for circulating recall petitions.[18] And, in Campbell, the Tenth Circuit determined that the more flexible balancing test applied to a constitutional provision limiting initiatives to a single subject.[19] The Campbell court differentiated between situations in which the overall quantum of speech is reduced,[20] which requires a strict scrutiny analysis, and situations involving nondiscriminatory regulations of the voting process that do not place direct limitations on the quantity of speech available, to which the more flexible balancing test applies.[21] Applying this analysis to Colorado’s single-subject requirement, the Campbell court concluded that the requirement was facially neutral and that it did not place a direct limitation on the quantity of speech available.[22] “If anything,” the *905 court noted, “requiring proponents to pursue separate initiatives on separate subjects might encourage more speech on each such subject.”[23] Thus, the Campbell court concluded that the flexible balancing test and not strict scrutiny provided the appropriate mechanism for analyzing Colorado’s single-subject requirement.[24]
Similarly, NRS 295.009’s single-subject requirement does not restrict the overall quantum of speech or otherwise inhibit communication with voters about proposed political change. The single-subject requirement is facially neutral and represents a reasonable, nondiscriminatory restriction.[25] Accordingly, this court will apply the balancing test and not strict scrutiny in analyzing the constitutionality of NRS 295.009’s single-subject requirement.
b. The single-subject requirement does not violate the First Amendment
In applying the balancing test, the Campbell court noted that the single-subject requirement “serve[s] to prevent voter confusion and promote informed decisions by narrowing the initiative to a single matter and providing information on that single matter to the voter.”[26] The Campbell court further noted that the single-subject rule prevents petitioners from gaining passage of provisions that would not otherwise become law by attaching them to more popular proposals or concealing them in a long and complex initiative.[27] These interests, the court concluded, were sufficiently important to justify the single-subject requirement.[28] The court further noted that no evidence suggested that the test was being applied in a manner that discriminated against the initiative proponents based on the content of their petition.[29] Thus, the court concluded that the Colorado single-subject limitation was constitutionally valid.
Like the provision at issue in Campbell, Nevada’s single-subject requirement does not prevent petitioners from addressing multiple subjects and thereby restrict the quantum of speech. It simply requires petitioners to address separate subjects in separate petitions. Moreover, the rule is nondiscriminatory, as it does not limit the subject matter of petitions in general; it merely limits petitioners to addressing one subject per petition. Thus, the application of *906 the single-subject requirement does not discriminate against the proponents based on the content of their initiative. Nevada also has a number of important interests in the single-subject rule. These interests mirror the interests cited in Campbell, including preventing the public from being confronted with confusing or misleading petitions and preventing proposals that would not otherwise become law from being passed solely because they are attached to more popular measures.[30]
We agree with the Tenth Circuit that these types of interests are significant and justify a single-subject requirement. Even though circulating more than one petition may increase costs for the proponents, circulating multiple petitions, as noted in Campbell, likely fosters speech. The Eleventh Circuit Court of Appeals has explained, in applying Florida’s single-subject rule, that “the Constitution does not require [a state] to structure its initiative process in the most efficient, user-friendly way possible.”[31] The single-subject requirement is designed to assist voters in determining whether to change the laws of Nevada and the structure of government and ultimately protects the sanctity of Nevada’s election process. Accordingly, we conclude that NRS 295.009’s single-subject requirement does not violate the First Amendment, as applied to the states through the Fourteenth Amendment, and is thus constitutionally valid.
C. The initiative fails to satisfy the single-subject requirement
NRS 295.009(l)(a) provides that “[e]ach petition for initiative or referendum must . . . [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto.” Subsection 2 of the statute further defines the “one subject” requirement set forth in subsection (l)(a):
For the purposes of paragraph (a) of subsection 1, a petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.
NRS 295.009 plainly sets forth the standard to be applied in determining whether an initiative petition encompasses more than one *907 subject. Specifically, each petition must embrace only one subject and matters necessarily connected with and pertaining to that subject, so that “the parts of the proposed initiative ... are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.’ ’[32]
Our preliminary inquiry, then, is whether the initiative’s parts are “functionally related” and “germane” to each other. Here, in considering the arguments made by the proponents’ counsel and examining the text of the initiative on its face, we may determine what the initiative’s overall subject is.
Although the proponents’ attorneys have not been entirely consistent, in either their briefs or during oral argument they have essentially admitted that the initiative originated as a response to the United States Supreme Court’s recent decision in Kelo v. New London,[33] which concluded that the taking of private property for private development in the context of a redevelopment scheme constituted public use. Indeed, the proponents’ briefs point to the Kelo majority’s statement that “State[s are not precluded] from placing further restrictions on [their] exercise of the takings power”[34] and indicate that the initiative, if enacted, “will do just that.” The proponents’ attorneys also indicate that the initiative, especially section 2, is designed to prevent the taking of private property by the government through eminent domain for the purposes of transferring that property to a private party.
Proponents’ attorneys have also explained, however, that the initiative’s provisions go further than simply addressing Kelo. At argument, counsel agreed that the initiative is “Kelo plus.” In fact, counsel made it clear that, with respect to the initiative, ‘ ‘Kelo is the tip of the iceberg.” And, in their briefs, the proponents’ attorneys repeatedly state that the initiative concerns eminent domain. The initiative itself unequivocally sustains these statements, as the vast majority of its provisions address one subject — eminent domain. Indeed, the description of the initiative’s effect specifically states that “[t]he following constitutional provisions shall supersede all conflicting Nevada law regarding eminent domain actions.” Thus, the primary subject of the initiative is unquestionably eminent domain, with its genesis the Supreme Court’s Kelo decision. Because each and every provision in the initiative must be “functionally related” and “germane” to one another, it follows that, with respect to this initiative, every provision must be “functionally related” and “germane” to the subject of eminent domain.
*908 Our review of the initiative reveals, however, that, despite the proponents’ contentions, not all of the initiative’s provisions are “functionally related” and “germane” to the subject of eminent domain. Specifically, we conclude that section 1 and section 8 of the initiative fail to satisfy this requirement. Under section 1, “[a]ll property rights are hereby declared to be fundamental constitutional rights and each and every right provided herein shall be self-executing.” Although the proponents insist that this section is “functionally related” and “germane” to the subject of eminent domain because it would require the application of a strict scrutiny standard when property is taken, we disagree.[35] This section is about making all property rights fundamental rights, and thereby creating a broad new class of fundamental rights. It does not deal with the subject of eminent domain. Further, this section’s inclusion in an initiative dealing with eminent domain does not provide sufficient notice of the subject addressed in section 1 or the interests likely to be affected by this section.
Section 8 addresses government actions that cause substantial economic loss to property rights. Specifically, section 8 provides that “government actions which result in substantial economic loss to private property shall require the payment of just compensation.” This section further provides that “[e]xamples of such substantial economic loss include, but are not limited to, the down zoning of private property, the elimination of any access to private property, and limiting the use of private air space.” As a result, this section is extremely broad and concerns any government action that causes substantial economic loss. Although this section would, as the proponents contend, apply to many inverse condemnation cases, which this court has held to be the “constitutional equivalent to eminent domain,”[36] it would also apply to myriad other government actions that do not fall even within the most broad definition of eminent domain. As the opponents point out, this provision would require payment of just compensation for, among other things, public construction projects that cause a decrease in business or value while the construction work is ongoing, the creation of new public transportation routes or modification of exist *909 ing routes when the change negatively impacts property values, and situations in which a zoning change request or special use permit is denied and the party requesting the change or permit would have seen a substantial increase in property value had the request been approved.[37]
To the extent that section 8 would require payment of just compensation for all of the aforementioned government actions if the actions caused substantial economic loss to private property, that section far exceeds the scope of what could, even under an extremely liberal definition, be classified as eminent domain. “Government actions” related to construction projects, public transportation routes, and the denial of requested zoning changes or special use permits are in no way “functionally related” or “germane” to eminent domain, and this section clearly fails to provide sufficient notice of the wide array of subjects addressed in section 8 or the interests likely to be affected by it. Because of the far-reaching impact of this section on government actions completely unrelated to eminent domain, the fact that this section will also affect inverse condemnation is insufficient to render section 8 functionally related or germane to eminent domain. The proponents could easily have phrased section 8 in a way that limited its impact to eminent domain, but instead, they chose to use expansive language addressing government actions far beyond the scope of this subject.
Accordingly, we conclude that although the initiative addresses a primary subject, eminent domain, it embraces more than one subject in light of sections 1 and 8. Because the initiative encompasses more than one subject, it violates NRS 295.009’s single-subject requirement. We therefore must determine the appropriate remedy for this violation.
D. The initiative must be severed to preserve the people’s will
The opponents argue that the initiative should be wholly stricken from the ballot. The proponents, on the other hand, assert that the initiative should be severed and preserved, in major part, for the voters’ consideration. For four reasons, severance and preservation is appropriate in this case.
First, and foremost, under the unique circumstances of this case, the initiative, even though it violates the single-subject re *910 quirement, is severable, as its primary subject is readily discern-able. As discussed above, the vast majority of the initiative’s provisions — twelve of fourteen — address eminent domain. Additionally, the proponents have repeatedly stated that the initiative concerns eminent domain. Thus, because the initiative has a single primary subject, it is amenable to severance; the two unrelated sections, 1 and 8, can simply be omitted from the rest of the initiative, so that it may proceed as an eminent domain initiative.
Second, the initiative’s section 14 contains a severability clause, which provides that “[a]ny provision contained in this section shall be deemed a separate and freestanding right and shall remain in full force and effect should any other provision contained in this section be stricken for any reason.’ ’ Thus, the initiative petition’s signers have expressed a desire to allow the initiative to proceed even without some sections, and, in severing, this court need not speculate whether the signatories would have signed the petition in its severed form.
Third, NRS 295.009 does not prescribe a remedy for violations of the single-subject requirement. In the absence of a legislative mandate that all violations of the single-subject requirement result in an initiative’s disqualification from the ballot, severance is permissible. Severance is routinely employed by courts to address single-subject violations after legislative enactments.[38] Unlike Nevada, most other states’ single-subject requirements are included in their constitutions.[39] Because Nevada derives its single-subject requirement from a statute, as opposed to the Constitution, we are not constitutionally mandated to strike the initiative from the ballot.[40]
*911 Additionally, when the single-subject requirement was first proposed in the form of S.B. 224, the accompanying Legislative Counsel’s Digest indicated that the measure required that petitions contain only one subject matter and matters properly related thereto, which had to be clearly expressed in the petition’s title.[41] It went on to state, “Petitions violating these requirements are declared void.”[42] The actual language of the proposal, with regard to initiatives, required that petitions embrace only one subject and, “[i]n all cases where the subject of the act or resolution is not so expressed in the title, the act or resolution is void as to the matter not expressed in the title.’[43]
After the Senate passed the proposal, the Assembly passed a significantly amended version, which revised the language of that provision in a manner eliminating any reference to void petitions, more like that which is now used.[44] The amended version was very similar to a separate bill that had been proposed in the Assembly.[45] The Senate did not concur with the Assembly’s amendments, however, and S.B. 224 was referred to a joint committee.[46] The joint committee generally kept the amended language in the provision at issue, further changing it mainly to eliminate reference to the petition’s title. That version was ultimately passed.[47] No legislative minutes describe why the original provision was changed as to the one-subject issue, or why the “void” language was removed.
Thus, the only evidence of legislative intent regarding a remedy for violations of the single-subject requirement is that violations do not automatically render an initiative void.[48] We therefore exercise our power to sever the initiative’s provisions that concern second *912 ary subjects, since the remaining provisions pertaining to the primary subject (eminent domain) satisfy the following conditions: “(1) the provisions have legal effect, and (2) it appears the [voters] intended the provisions to stand alone even if another section in the same [initiative] is held invalid.”[49] Here, the sections related to eminent domain are not impacted by severing sections 1 and 8, and the voters intended for these sections to stand alone if necessary.
Fourth, and significantly, our Constitution reserves to the people the initiative power.[50] Although the Legislature has the power to enact laws to facilitate the operation of the initiative process,[51] which includes enacting a single-subject requirement for initiative petitions, this court, in interpreting and applying such laws, must make every effort to sustain and preserve the people’s constitutional right to amend their constitution through the initiative process. In this instance, because the Legislature has provided no specific remedy, striking the entire initiative, instead of severing the offending sections and allowing the remaining initiative to be placed on the November ballot, would run counter to the people’s right to express their will through the initiative process. We have recognized that “the right to initiate change in this state’s laws through ballot proposals is one of the basic powers enumerated in this state’s constitution.”[52]
And, although the dissent asserts that our decision to sever is inconsistent with this court’s prior decision in Rogers v. Heller,[53] our decision in no way affects our conclusion to not intervene in Rogers. In Rogers, the validity of the initiative rested on a thresh *913 old funding requirement under Nevada Constitution Article 19, Section 6, which required strict adherence.[54] Thus, we declined to sever the impermissible provision, as it was clearly unconstitutional. Additionally, severing the initiative for lack of an appropriation mechanism would have gutted the initiative’s central component: that the Legislature appropriate and spend a specific amount for public education in all future budget biennia.[55] No other portion of the initiative could have stood in the absence of this central component. We agree that an initiative that does not meet a threshold constitutional requirement is not subject to judicial severance for the reasons stated in Rogers and cited by the dissent. However, in the present case, unlike the situation in Rogers, we are not faced with a challenge to a constitutional requirement; rather, we must interpret a recently enacted single-subject statute. The initiative can also be kept substantively intact by severing sections 1 and 8.
For all of these reasons, we conclude that sections 1 and 8 should be severed from the initiative in light of the single-subject violation. Severance eliminates the “Hobson’s choice” described by our dissenting colleagues. We also note that the proponents remain free to circulate, in the future, one or more initiative petitions concerning the severed sections.
E. Initiative petitions must contain legislative, or policy proposals, and certain of the initiative’s provisions violate this threshold requirement
In Citizens for Train Trench Vote v. Reno,[56] this court broadly stated that “regardless whether an initiative proposes enactment of a new statute or ordinance, or a new provision in the constitution or city charter, or an amendment to any of these types of laws, it must propose policy — it may not dictate administrative details.” Similarly, in Garvin v. District Court, we reaffirmed that “the initiative and referendum powers reserved to the people, although broad, are limited to legislation and do not extend to administrative matters.”[57] Although the initiative’s proponents correctly note that the administrative/legislative distinction has as its genesis local government initiatives, since local government bodies perform both administrative and legislative functions,[58] the proponents fail to recognize the point of this distinction’s existence and the requirement that all proposed laws be policy oriented.
*914 The very existence of the administrative/legislative distinction rests on the dual function of local government bodies. Unlike the Legislature, which performs strictly legislative functions, a local government body performs administrative functions as well. Consequently, although Article 19, Section 4, pertaining to local government initiatives, includes “legislation” language to clarify that the people are not permitted to interfere with local government’s administrative functions, Article 19, Section 2, which governs initiatives concerning statutes and amendments to the Constitution, does not need to include any “legislation” language.
Outside of the initiative power, statutes and constitutional amendments are proposed by the Legislature, a non-administrative body. In Nevada, as in most states, we have an administrative code, which governs administrative issues and is created not by the Legislature but by entities with rulemaking authority, which fill in administrative details pertaining to the policy articulated in legislation. The people’s initiative power is “coequal, coextensive, and concurrent” with that of the Legislature;[59] thus, the people have power that is legislative in nature. That the people have only legislative power, by definition, explains why Article 19, Section 2 does not include any “legislation” language — it would be redundant.
By concluding that our Constitution may include administrative, non-policy matters, we would defy the very nature of the Constitution itself. As courts have recognized, “[t]he written constitution in this nation has always enjoyed a status superior to legislative enactments and has been variously portrayed as ‘original legislation,’ ‘organic law,’ or ‘fundamental law.’ ”[60] One court in particular has explained that a state constitution is basically legislation that the people enact directly:
‘ ‘A state constitution may aptly be likened to a legislative act enacted directly by the people themselves in their sovereign *915 capacity as a political entity . . . and therefore is the fundamental, extraordinary act by which the people establish the structure and mechanism of their government. Essentially, a constitution is fundamental legislation directly by the people acting politically in their sovereign capacity . . . .”[61]
We have also determined that the Constitution “has been very properly defined to be a legislative act of the people themselves in their sovereign capacity.”[62] Consequently, as we recognized in Train Trench, an initiative intending to amend our Constitution “must propose policy — it may not dictate administrative details.”[63] Including administrative details in the Constitution would imper-missibly ignore its very definition as “original legislation” and would effectively turn on its head the fundamental concept of the Constitution as organic law. Initiatives proposing constitutional amendments therefore must propose policy and not administrative details, and we have recognized that preelection intervention is warranted when an initiative fails to meet the threshold requirement that it propose policy.[64]
We now turn to the initiative’s remaining sections. As set forth in Train Trench, legislation “originates or enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of the citizens or their officers,’ ’ whereas impermissible administrative matters simply “put into execution previously-declared policies or previously-enacted laws or direct[ ] a decision that has been delegated to [a governmental body with that authority].’ ’[65]
Here, most of the initiative’s remaining provisions appear to dictate policy, as they at least arguably pertain to substantive changes in eminent domain law. Three of the initiative’s provisions, however — sections 3, 9, and 10 — dictate administrative details in clear contravention of the threshold requirement, as these rulemaking decisions have been delegated to a governmental body with that authority — the courts. In particular, the initiative’s section 3 states *916 that “ [unpublished eminent domain judicial opinions or orders shall be null and void.” Section 9 declares that “[n]o Nevada state court judge or justice who has not been elected to a current term of office shall have the authority to issue any ruling in an eminent domain proceeding.” And finally, section 10 provides that “[i]n all eminent domain actions, a property owner shall have the right to preempt [sic] one judge at the district court level and one justice at each appellate court level. Upon prior notice to all parties, the clerk of that court shall randomly select a currently elected district court judge to replace the judge or justice who was removed by preemption [sic].’ ’
These provisions concern the day-to-day operations of Nevada’s court system and therefore direct decisions that have been delegated to the judiciary.[66] They do not propose policy but instead are distinctly administrative; consequently, they must be stricken.
F. The opponents’ equal protection argument will not be considered
In addition to the arguments addressed above, the opponents argue that if enacted, the initiative would violate the Fourteenth Amendment’s Equal Protection Clause. As we recently explained in Herbst Gaming, Inc. v. Secretary of State,[67] however, challenges to an initiative’s substantive validity will not be considered as part of this court’s preelection review of an initiative. Such challenges are not ripe until an initiative becomes law.[68] Accordingly, as in Herbst, we decline to address the opponents’ equal protection challenge.[69] We note that nonetheless, the opponents are not without a judicial remedy, since, if the initiative passes, challenges to *917 the substantive validity of the proposed amendment can be made after it becomes law.[70]

CONCLUSION

The single-subject requirement contained in NRS 295.009 was properly enacted and does not run afoul of the First Amendment. In this case, the initiative violates the single-subject requirement because it includes two provisions that are not functionally related or germane to eminent domain. Additionally, three provisions violate the threshold prerequisite that initiatives propose policy. We decline, however, to remove the entire initiative from the ballot. Instead, we are compelled, under the unique circumstances of this case, to sever the portions of the initiative that pertain to secondary subjects and to strike the provisions that dictate administrative details. Accordingly, sections 1 and 8, shall be severed from the initiative, and sections 3, 9, and 10, shall be stricken. Sections 2, 4, 5, 6, 7, 11, 12, 13 and 14 may proceed to the November 2006 ballot. In this, we affirm in part and reverse in part the district court’s order.[71]
Becker, Gibbons and Paeraguirre, JJ., and Gamble, D. J., concur.

 See NRS 293.124.

 See County of Clark v. Upchurch, 114 Nev. 749, 961 P.2d 754 (1998) (acknowledging that, where a district court’s decision in a declaratory relief action is based on statutory construction, this court’s review is de novo).

 See County of Clark v. Doumani, 114 Nev. 46, 53, 952 P.2d 13, 17 (1998).

 Koller v. State, 122 Nev. 223, 226, 130 P.3d 653, 655 (2006) (citing City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 58, 63 P3d 1147, 1148 (2003)).

 203 F.3d 738 (10th Cir. 2000).

 Id. at 746.

 Id. at 745 (stating that the single-subject requirement “cannot be characterized as a direct limitation on the quantity of speech available to them”).

 Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 205 (1999).

 Because Article 19, Section 5 expressly grants the Legislature the authority to enact laws that facilitate the provisions of Article 19, which, we conclude, includes enacting a single-subject requirement for initiative petitions, the proponents’ reliance on this court’s decision in State v. Findlay, 20 Nev. 198, 19 P.2d 241 (1888), is misplaced. Unlike the statute at issue in Findlay, which denied the right to vote to members of a particular church, NRS 295.009 simply requires that different subjects be addressed in different initiatives.

 Cf. Citizens for Honest Gov’t v. Sec. of State, 116 Nev. 939, 947, 11 P.3d 121, 126-27 (2000) (rejecting a constitutional challenge to statutory limitations on the right to circulate a petition for the recall of an elected official, and noting that, “in determining whether legislation regulating the recall procedures ‘aid[s] the operation’ of the recall right, this court has held that ‘any statutory provision intended to safeguard the operation of recall procedures aids in the operation thereof’” (quoting Fiannaca v. Gill, 78 Nev. 337, 345, 372 P.2d 683, 687 (1962))).

 504 U.S. 428 (1992).

 Id. at 433-34.

 Id. at 434.

 Id.

 Id.

 Id.

 Citizens for Honest Gov’t v. Sec. of State, 116 Nev 939, 11 P.3d 121 (2000).

 Campbell, 203 F.3d at 745. Colorado’s single-subject provision states that “[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title.” Colo. Const, art. V, § 1(5.5).

 Campbell, 203 F.3d at 744-45. See, e.g., Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182 (1999) (noting that various restrictions on Colorado’s initiative process reduced the overall quantum of speech by placing limits on who could circulate petitions and by effectively discouraging people from circulating petitions by eliminating the anonymity of the circulators, and consequently applying strict scrutiny to strike down those restrictions).

 Campbell, 203 F.3d at 742-46.

 Id. at 745-47.

 Id. at 745.

 Id. at 745-46.

 Id.

 Id. at 746.

 Id.

 Id.

 Id.

 Id.

 Biddulph v. Mortham, 89 F.3d 1491, 1500-01 (11th Cir. 1996).

 NRS 295.009(2).

 545 U.S. 469 (2005).

 Id. at 489.

 In support of their argument that section 1 is “functionally related” and “germane” to eminent domain, the proponents point out that Article 1, Section 8(6) of the Nevada Constitution and the Fifth Amendment to the United States Constitution already protect property rights by requiring the payment of just compensation when private property is taken. This argument is irrelevant to our analysis here, however, as it does not in any way demonstrate how section 1, which creates a broad new category of fundamental rights, is “functionally related” or “germane” to the subject of eminent domain.

 County of Clark v. Alper, 100 Nev. 382, 391, 685 P.2d 943, 949 (1984).

 To the extent that the proponents imply that the denial of a request for a zoning change or special use permit is not “government action” but is instead “government inaction,” that contention lacks merit. The government agency’s denial of such a request would clearly be considered government action.

 See Hammerschmidt v. Boone County, 877 S.W.2d 98, 104 (Mo. 1994) (severing portion of bill that violated single-subject rule and allowing primary subject to remain in effect); State ex rel. v. Franklin Cty. Bd. of Elec., 580 N.E.2d 767, 770 (Ohio 1991) (severing offending portion of bill to cure single-subject defect); PA Against Gambling Expansion Fund v. Com., 877 A.2d 383, 403 (Pa. 2005) (severing provisions of gaming act that were not germane to single subject and “clearly not essentially and inseparably connected with the rest of the Act”).

 See Senate of the State of Cal. v. Jones, 988 P.2d 1089, 1106 (Cal. 1999) (declaring void an initiative that contains more than one subject and declining to sever offending portions in compliance with the state constitution); Fine v. Firestone, 448 So. 2d 984, 992-93 (Fla. 1984) (holding that citizen initiative violated constitutional single-subject requirement and affirming removal from ballot).

 We recently pointed to the distinctions in applying constitutional and statutory provisions, albeit in a different context, in Nevadans for Nevada v. Beers, 122 Nev. 930, 142 P.3d 339 (2006).

 S.B. 224 (bill text, as introduced, March 21, 2005); See Senate Journal 73d Leg., at 246 (Nev., March 21, 2005).

 S.B. 224 (bill text, as introduced, March 21, 2005).

 S.B. 224, § 2(1) (March 21, 2005).

 Assembly Daily Journal, 73d Leg. (Nev., May 27, 2005); see also S.B. 224 amend, no. 1102.

 Assembly Daily Journal, 73d Leg. (Nev., May 27, 2005); see also S.B. 224 amend, no. 1102; Work Session on A.B. 185 Before the Sen. Leg. Operations and Elections Comm., 73d Leg. (May 12, 2005).

 Senate Journal, 73d Leg., at 2044 (Nev., June 1, 2005); Senate Journal, 73d Leg., at 2208, 2231 (Nev., June 3 , 2005).

 Assembly Daily Journal, 73d Leg., at 92 104, 142 (Nev., June 6, 2005); Senate Journal, 73d Leg., at 2473-81, 2516 (Nev., June 6, 2005).

 See, e.g., Carson-Tahoe Hosp. v. Bldg. & Constr. Trades, 122 Nev. 218, 128 P.3d 1065, 1068 (2006) (noting generally that previous version of a law considered but not enacted by the legislature may be examined in determining legislative intent). Although the dissent cites this court’s decision in State v. Hallock, 19 Nev. 384, 390, 12 P. 832, 835 (1887), for the proposition that, in the legislative context, this court has historically concluded that single-subject *912 requirement violations by the Legislature render the entire legislative act void when it is not possible to determine from an act and its title which portion of the act are valid and which are not, the Hallock decision also conceptualizes that, under other circumstances, it may be permissible to sever offending portions of the act.

 Brewery Arts Ctr. v. State Bd. Examiners, 108 Nev. 1050, 1056, 843 P.2d 369, 373 (1992) (citing County of Clark v. City of Las Vegas, 92 Nev. 323, 336, 550 P.2d 779, 788 (1976)); see also Santa Barbara Sch. Dist. v. Superior Court, 530 P.2d 605, 650 n.7 (Cal. 1975) (recognizing that the same severability test applies to initiatives and statutes enacted by the legislature); Ray v. Monham, 742 So. 2d 1276, 1280-81 (Fla. 1999) (applying severability doctrine to citizen-initiated constitutional amendments), modified on other grounds by Cook v. City of Jacksonville, 823 So. 2d 86 (Fla. 2002); cf. Nevada Judges Ass’n v. Lau, 112 Nev. 51, 60-61, 910 P.2d 898, 904 (1996) (severing initiative into two separate sections).

 Nev. Const, art. 19, § 2(1) (providing that “the people reserve to themselves the power to propose, by initiative petition . . . amendments to this Constitution, and to enact or reject them at the polls”).

 Id. § 5.

 University Sys. v. Nevadans for Sound Gov’t, 120 Nev. 712, 734, 100 P.3d 179, 195 (2004).

 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001).

 Id.

 Id. at 175, 177, 18 P.3d at 1038-39.

 118 Nev. 574, 583, 53 P.3d 387, 392 (2002), overruled in part on other grounds by Garvin v. District Court, 118 Nev. 749, 59 P3d 1180 (2002).

 118 Nev. 749, 751, 59 P.3d 1180, 1181 (2002).

 See, e.g., Comment, Limitations on Initiative and Referendum, 3 Stan. L. Rev. 497, 503 (1951).

 Gallivan v. Walker, 54 P.3d 1069, 1080 (Utah 2002); see also State ex rel. Stenberg v. Moore, 602 N.W.2d 465, 474 (Neb. 1999) (ruling that “the Legislature and the electorate are concurrently equal in rank as sources of legislation”).

 Perkins v. Eskridge, 366 A.2d 21, 32-33 (Md. 1976) (citing McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 415 (1819); Alexander v. State, 150 So. 2d 204, 208 (Ala. 1963); Williams v. State, 307 N.E. 457, 461 (Ind. 1974); In re Proposal C, 185 N.W.2d 9, 14 (Mich. 1971); and Dean v. Paolicelli, 72 S.E.2d (Va. 1952)), overruled on other grounds by Parrott v. State, 483 A.2d 68 (Md. 1984).

 Id. at 33 (quoting Board of Supervisors of Elections v. Attorney Gen., 229 A.2d 388, 394 (Md. 1967)).

 King v. Board of Regents, 65 Nev. 533, 556, 200 P.2d 221, 232 (1948).

 Train Trench, 118 Nev. at 583, 53 P.3d at 392.

 See, e.g., Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 498-99, 50 P.3d 546, 552-53 (2002), overruled in part on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P3d 1180 (2002); Train Trench, 118 Nev. at 585, 53 P.3d at 393-94.

 118 Nev. at 582, 53 P.3d at 392.

 See, e.g., NRS 2.120(1), (2) (recognizing that “the supreme court may make rules not inconsistent with the constitution and laws of the state for its own government, the government of the district courts, and the government of the State Bar of Nevada” and that “[t]he supreme court, by rules adopted and published from time to time, shall regulate original and appellate civil practice and procedure, including, without limitation, pleadings, motions, writs, notices and forms of process, injudicial proceedings in all courts of the state”); Nev. Const, art. 6, § 19(1) (providing that the chief justice as administrative head of the court system and subject to rules that the supreme court may adopt, may apportion the work of the supreme court among justices, and may recall to active service any retired justice or judge and assign that justice or judge to “appropriate temporary duty within the court system”).

 122 Nev. 877, 141 P.3d 1224 (2006) (declining to consider due process, equal protection, and right of privacy challenges to an initiative as part of this court’s preelection review).

 Id. at 888, 141 P.3d at 1231.

 Id.

 Id.; see also Garvin v. Dist. Ct., 118 Nev. 749, 766, 59 P.3d 1180, 1191 (2002) (declining to address arguments related to an initiative’s substantive validity during preelection review, but noting that parties could challenge the substantive validity of the legislation after it was enacted).

 In light of the nature and urgency of this matter, we suspend NRAP 41(a) and direct the clerk of this court to issue the remittitur forthwith. See Rogers, 117 Nev. at 178 n.24, 18 P.3d at 1040 n.24.