132 Nev., Advance Opinion 3

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION, Appellant, vs. SAN FLORENTINE AVENUE TRUST; AND JPMORGAN MORTGAGE ACQUISITION CORPORATION, Respondents. | No. 66177 **FILED** JAN 14 2016 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting a preliminary injunction. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

Alverson, Taylor, Mortensen & Sanders and Seetal N. Tejura, Las Vegas, for Appellant.

Law Offices of Michael F. Bohn, Ltd., and Michael F. Bohn and Jeffrey Arlitz, Las Vegas, for Respondent San Florentine Avenue Trust.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Jordan J. Butler, Las Vegas, for Respondent JPMorgan Mortgage Acquisition Corporation.

BEFORE THE COURT EN BANC.

SUPREME COURT OF NEVADA

(O) 1947A

3/25/16: Corrected per letter to publishers. CT

16-01247

## OPINION

By the Court, PARRAGUIRRE, C.J.:

According to NRS 116.3116(4) (2013), "[u]nless the declaration otherwise provides, if two or more [homeowners'] associations have liens for assessments created at any time on the same property, those liens have equal priority."[1] Here we are asked to resolve how "equal priority" liens interact during a foreclosure. Specifically, this court must determine when multiple homeowners' association liens have equal priority, and whether one equal priority lienholder's foreclosure (1) has no effect on other equal priority liens, such that they survive the foreclosure sale and continue encumbering the property; or (2) extinguishes the other equal priority liens and entitles those lienholders to share in the sale proceeds. We conclude NRS 116.3116(4) (2013) unambiguously explains when liens have equal priority. We further conclude that when one equal priority lienholder forecloses on its lien, any other equal priority liens: (1) are extinguished, and (2) must be paid from the sale proceeds in full or on a pro-rata basis if the sale proceeds are insufficient to fully pay all equal priority liens. Accordingly, we affirm the district court's order granting a preliminary injunction.

## FACTS

The property at the center of this dispute is a part of two homeowners' associations (HOAs): appellant Southern Highlands Community Association (Southern Highlands) and nonparty The Foothills at Southern Highlands Homeowners Association (Foothills). Foothills

---

[1]NRS 116.3116 was amended by the 2015 Legislature; former subsection (4) was renumbered and, with identical language, is now NRS 116.3116(8). 2015 Nev. Stat., ch. 266, § 1, at 1335.




foreclosed on the subject property after the former owner failed to pay association dues, and respondent San Florentine Avenue Trust (San Florentine) purchased it. San Florentine paid $45,100 for the property, resulting in approximately $35,000 in excess proceeds over the amount of Foothills' lien. Southern Highlands then recorded a lien against the property for unpaid association dues pre-dating Foothills' sale. Southern Highlands' lien was left unpaid, and eventually Southern Highlands set a foreclosure sale date.

San Florentine sought to preliminarily enjoin Southern Highlands' foreclosure sale. It argued NRS 116.3116(4) (2013) gives equal priority to multiple HOA liens, and thus, Foothills' foreclosure sale extinguished Southern Highlands' lien, while also entitling Southern Highlands to satisfy its lien from the foreclosure sale proceeds. The district court granted the preliminary injunction without addressing the merits of San Florentine's argument. Southern Highlands now appeals.

### DISCUSSION

Southern Highlands contends that the preliminary injunction was improperly granted because, according to NRS Chapter 116, Southern Highlands and Foothills had equal priority liens, and an equal priority lien survives the foreclosure sale of a competing equal priority lien.

A district court's decision to grant a preliminary injunction "'will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard.'" *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009) (quoting *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992)). "[W]hen the underlying issues in the motion for preliminary injunction 'involve[ ] questions of statutory construction, including the meaning and scope of a statute, we review . . . those questions [of law] de

novo.'" *State, Dep't of Bus. & Indus., Fin. Insts. Div. v. Nevada Ass'n Servs., Inc.*, 128 Nev., Adv. Op. 34, 294 P.3d 1223, 1226 (2012) (alterations in original) (quoting *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 901, 141 P.3d 1235, 1240 (2006)).

"When a statute's language is clear and unambiguous, it must be given its plain meaning . . . ." *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 476, 168 P.3d 731, 737 (2007). "A statute is ambiguous if it is capable of being understood in two or more senses by reasonably well-informed persons." *Id.* "When construing an ambiguous statute, '[t]he meaning of the words used [in the statute] may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it.'" *Id.* at 476, 168 P.3d at 737-38 (alterations in original) (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 650-51, 730 P.2d 438, 443 (1986)).

*The Foothills and Southern Highlands liens had equal priority*

First, this court must determine the lien priority between the Foothills and Southern Highlands liens. NRS 116.3116(4) (2013) governs priority among competing HOA liens, stating: "[u]nless the declaration otherwise provides, if two or more associations have liens for assessments created at any time on the same property, those liens have equal priority."

According to NRS 116.3116(4) (2013)'s plain language, liens will have "equal priority" if the lienholders are "associations" and the liens secure "assessments" on the same property. An "association" is "the unit-owners' association organized under [the statute setting forth the rules for establishing an HOA]." NRS 116.011. Although "assessment" is not a defined term, NRS Chapter 116 consistently uses the term to describe

various fees and charges levied by HOAs.[2] *See, e.g.*, NRS 116.3102; NRS 116.3115; NRS 116.3116. Although this court presently declines to catalogue every charge that may or may not be an assessment, the Legislature clearly envisioned "assessments" as including an HOA's monthly dues. *See* NRS 116.3116(2) (2013) (giving HOAs a superpriority as to "assessments for common expenses based on the periodic budget adopted by the association");[3] *see also SFR Invs. Pool 1 v. U.S. Bank*, 130 Nev., Adv. Op. 75, 334 P.3d 408, 410-11 (2014). Finally, NRS 116.3116(4) (2013)'s plain language states that HOAs' assessment-based liens have "equal priority" regardless of when the underlying assessments were created. Thus, we conclude NRS 116.3116(4) (2013)'s plain language unambiguously gives "equal priority" to two or more HOA liens on the same property when those liens secure unpaid HOA fees or charges, including unpaid HOA dues, regardless of when the underlying assessment arose or became due.[4]

Based on NRS 116.3116(4) (2013)'s plain language, the Foothills and Southern Highlands liens will have "equal priority,"

---

[2]That usage is consistent with *Black's* definition: an assessment is an "[i]mposition of something, such as a tax or fine, according to an established rate; [or] the tax or fine so imposed." *Assessment, Black's Law Dictionary* (10th ed. 2014).

[3]The 2015 Legislature amended NRS 116.3116 such that the material language from subsection (2) now appears at subsection (3)(b). 2015 Nev. Stat., ch. 266, § 1, at 1334.

[4]Although NRS 116.3116(4) (2013) allows an HOA's declaration to alter this "equal priority" default rule, neither party here contends its declaration establishes which lien has priority. *See* NRS 116.3116(4) (2013) (stating that HOA liens have equal priority "[u]nless the declaration otherwise provides").

regardless of when the underlying assessments were created, if (1) Foothills and Southern Highlands are "associations," (2) with liens for unpaid "assessments," (3) attached to the same property. Here, the parties agree that Southern Highlands and Foothills are HOAs subject to NRS Chapter 116; thus, the lienholders here are two "associations" for the purposes of NRS 116.3116(4) (2013). Further, Foothills and Southern Highlands both had liens for unpaid HOA dues, which are "assessments" for the purposes of NRS 116.3116(4) (2013). Finally, both Southern Highlands and Foothills had liens against the subject property.

Therefore, NRS 116.3116(4) (2013) unambiguously gives Foothills' and Southern Highlands' liens "equal priority" regardless of when the underlying assessments arose or became due. However, this court must still determine what effect, if any, Foothills' foreclosure sale had on Southern Highlands' equal priority lien.

*Foothills' foreclosure sale extinguished Southern Highlands' lien, but Southern Highlands is entitled to a share of the sale proceeds*

Although NRS 116.3116(4) (2013) unambiguously identifies when HOA liens have equal priority, the term "equal priority" is, itself, ambiguous because NRS Chapter 116 never clarifies how equal priority liens interact when one equal priority lienholder forecloses. One commentator described the trouble with labeling liens as "equal priority," noting: "if two liens are equal in priority, the foreclosure of one lien cannot eliminate the other, else the foreclosed lien would be superior. However, neither can the non-foreclosed lien remain, else it would be superior." Guy Lamoyne Black, Comment, *Tax Titles in Utah: Caveats for Potential Purchasers and Proposals for Change*, 1991 BYU L. Rev. 1573, 1605 (1991). Accordingly, the term "equal priority" in NRS 116.3116(4) (2013) is ambiguous because reasonably well-informed people could differ on

whether (1) an equal priority lien survives the foreclosure sale of another equal priority lien, or (2) an equal priority lien is extinguished but entitles the lienholder to sale proceeds when another equal priority lienholder forecloses. *See D.R. Horton*, 123 Nev. at 476, 168 P.3d at 737. Having concluded that the term "equal priority" is ambiguous, we must look outside NRS 116.3116(4) (2013)'s text to determine the Legislature's intended meaning. *See id.* at 476-77, 168 P.3d at 737-38.

Both parties erroneously contend that NRS 116.31164(3) (2005)[5] resolves the question of how equal priority liens interact during a foreclosure.[6] NRS 116.31164(3) (2005) provides that

> After the sale, the person conducting the sale shall . . .
>
> (c) [a]pply the proceeds of the sale for the following purposes in the following order:
>
> (1) The reasonable expenses of sale;

---

[5]The 2015 Legislature amended NRS 116.31164 such that the material language from subsection (3) is now found in subsection (7). 2015 Nev. Stat., ch. 266, § 5, at 1341-42.

[6]San Florentine focuses on a portion of NRS 116.31164(3)(c)(4) (2005) that requires "[s]atisfaction in the order of priority" after a foreclosure sale. According to San Florentine, this shows that Southern Highlands' lien was extinguished by the sale but that Southern Highlands is also entitled to proceeds from that sale in an equal priority position. Conversely, Southern Highlands contends that NRS 116.31164(3)(c)(4) (2005) expressly requires payment for "the association's lien," then "[s]atisfaction in the order of priority of any *subordinate claim* of record." (Emphasis added.) Thus, Southern Highlands argues, NRS 116.31164(3) shows *equal* priority lienholders are never entitled to proceeds, so such lien claims must survive a foreclosure sale. These arguments lack merit because, as discussed below, NRS 116.31164(3) (2005) was never intended to resolve equal priority lien claims.

SUPREME COURT OF NEVADA

7

(O) 1947A

(2) The reasonable expenses of securing possession before sale . . . ;

*(3) Satisfaction of the association's lien;*

*(4) Satisfaction in the order of priority of any subordinate claim of record . . . .*

(Emphasis added.) NRS 116.31164(3) (2005)'s plain language and legislative history do not discuss or contemplate equal priority liens. The statute was modeled after § 3-510 of the Uniform Land Transactions Act (ULTA). *See* 1982 UCIOA § 3-116, comment 4 (the language codified at NRS 116.31164(3) (2005) was modeled after 1975 ULTA § 3-510); 1975 ULTA § 3-510. However, ULTA never discusses or clarifies how to resolve disputes between equal priority lienholders. *See* 1975 ULTA § 3-301; *see also* 1978 ULTA § 3-301, cmts. 1-6. NRS 116.31164(3) (2005) does not textually explain how equal priority liens interact during a foreclosure sale, and the Legislature never intended for NRS 116.31164(3) (2005) to provide such guidance.

Furthermore, no provision of NRS Chapter 116 explains what happens to equal priority liens during a foreclosure, and thus, no plain meaning analysis is possible. The legislative history for NRS Chapter 116 never discusses what equal priority liens are or how they interact with each other. Nor does the UCIOA or its comments explain how equal priority liens interact with one another. *See SFR Invs.*, 130 Nev., Adv. Op. 75, 334 P.3d at 410, 413 (noting that NRS Chapter 116 is derived from the 1982 UCIOA, and thus, UCIOA's comments should be given considerable interpretive weight).

However, more generally, NRS 116.1108 provides that "[t]he principles of law and equity . . . supplement the provisions of this chapter, except to the extent inconsistent with this chapter." Although we have found no settled "principles of law" clarifying how equal priority liens

interact during a foreclosure, we find California's approach for equal priority mechanics' liens persuasive. There, when one equal priority mechanic's lienholder forecloses, the other equal priority mechanic's lienholders are entitled to proceeds in the same priority position as the foreclosing lienholder, and their liens are extinguished. 5 Miller & Starr, *Cal. Real Estate* § 11:130 (3d ed. 2009); *see Santa Clara Land Title Co. v. Nowack & Assocs., Inc.*, 277 Cal. Rptr. 497, 500-01 (Ct. App. 1991). If the sale proceeds are insufficient to pay all equal priority mechanic's lienholders, the funds are distributed among all equal priority lienholders on a pro-rata basis. Miller & Starr, *supra*, § 11:130; *see Idaco Lumber Co. v. Nw. Sav. & Loan Ass'n*, 71 Cal. Rptr. 422, 424-29 (Ct. App. 1968). Although we have never so held, Nevada's mechanic's lien statutes appear to follow the same approach. *See* NRS 108.236; NRS 108.239(11).

We find this approach persuasive for three reasons. First, even if NRS Chapter 116 does not compel this approach, it is not inconsistent with the chapter. *See* NRS 116.1108. Second, we conclude this approach better fits the term "equal priority" because (1) it allows all equal priority lienholders to be paid at the same time; and (2) if the sale proceeds are insufficient to satisfy all equal priority liens, all equal priority lienholders, including the foreclosing lienholder, share that loss pro-rata. Finally, this approach avoids scenarios where multiple equal priority lienholders attempt to foreclose on the same property at different times even though the initial foreclosure sale produced sufficient sale proceeds to pay off all equal priority liens. Therefore, we choose to adopt this approach and find its reasoning sound.

Accordingly, Southern Highlands cannot hold a foreclosure sale on the property because Foothills' foreclosure sale extinguished Southern Highlands' lien. Nevertheless, Southern Highlands is entitled to

proceeds from that sale in the amount of its lien on the date of the foreclosure sale. If the sale proceeds are insufficient to satisfy Southern Highlands' lien, Foothills and Southern Highlands must share that loss pro-rata.

## CONCLUSION

NRS 116.3116(4) (2013) unambiguously gives "equal priority" to two or more HOA liens on the same property when those liens secure unpaid HOA fees or charges, including unpaid HOA dues, regardless of when the underlying assessment arose or became due. Thus, NRS 116.3116(4) (2013) gave the Foothills and Southern Highlands liens equal priority. When one equal priority lienholder forecloses, all other equal priority liens are extinguished. However, all equal priority lienholders share in the foreclosure sale proceeds in one of two ways: (1) all equal priority liens are paid in full whenever the proceeds are sufficient to do so; or (2) when the sale proceeds are inadequate to fully satisfy all the equal priority liens, all equal priority lienholders receive a pro-rata share of the proceeds. Under this methodology, Foothills' foreclosure sale extinguished Southern Highlands' lien, but Southern Highlands remains entitled to its proper share of the sale proceeds.[7]

---

[7]Southern Highlands' briefing raised additional and colorable arguments challenging the district court's preliminary injunction order; however, we decline to address them. Our holding is that Foothills' foreclosure sale extinguished Southern Highlands' lien; therefore, Southern Highlands simply has no legal right to foreclose on the property. Regardless of any error the district court may have committed, the preliminary injunction was a proper method for preventing Southern Highlands from foreclosing on a lien that no longer existed, and we need not agree with the district court's rationale to affirm its ultimate disposition. *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 598-99, 245 P.3d 1198, 1202 (2010).

Accordingly, we affirm the district court's preliminary injunction order.

_____, C.J.
Parraguirre

We concur:

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering