THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, FINANCIAL INSTITUTIONS DIVISION; AND GEORGE E. BURNS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE STATE OF NEVADA, DEPARTMENT OF BUSINESS AND INDUSTRY, FINANCIAL INSTITUTIONS DIVISION, APPELLANTS, *v.* NEVADA ASSOCIATION SERVICES, INC.; RMI MANAGEMENT, LLC; AND ANGIUS & TERRY COLLECTIONS, INC., RESPONDENTS.

No. 57470

August 2, 2012                                       294 P.3d 1223

*Catherine Cortez Masto*, Attorney General, and *Daniel D. Ebihara*, Deputy Attorney General, Carson City, for Appellants.

*Holland & Hart LLP* and *Patrick John Reilly* and *Nicole E. Lovelock*, Las Vegas, for Respondents.

Before DOUGLAS, GIBBONS and PARRAGUIRRE, JJ.

## OPINION[1]

By the Court, GIBBONS, J.:

In this appeal, we review a district court order granting a preliminary injunction prohibiting appellants State of Nevada Department of Business and Industry, the Financial Institutions Division, and its Commissioner, George E. Burns (collectively, the Department), from enforcing its declaratory order and advisory opinion regarding the appropriate amount of homeowners' association lien fees respondents Nevada Association Services, Inc.; RMI Management, LLC; and Angius & Terry Collections, Inc. (collectively, NAS) can collect. Because the district court did not abuse its discretion in determining that the Department did not have jurisdiction to issue an advisory opinion regarding NRS Chapter 116 and that NAS would suffer irreparable harm if the Department enforced its opinion, we affirm the district court's order granting NAS's request for injunctive relief.

---

[1]We affirmed the district court's order in an unpublished order entered May 23, 2012. Respondents and other interested parties subsequently filed motions to reissue the decision as a published opinion. NRAP 36(f). Cause appearing, we grant the motions. Accordingly, we issue this opinion in place of the prior unpublished order.

## FACTS AND PROCEDURAL HISTORY

The Department is responsible for regulating the collection practices of collection agencies in the state of Nevada. The statutes pertaining to the regulation and licensing of collection agencies are found in NRS Chapter 649. The Department has the authority to issue advisory opinions "as to the applicability of any [such] statutory provision." NRS 233B.120. A homeowners' association (or unit owners' association), which may act on behalf of a common-interest community, will often employ collection agencies to assist it with collecting assessments owed by homeowners within the community. The statutes governing common-interest communities and common-interest ownership are contained in NRS Chapter 116.

In November 2010, the Department issued an advisory opinion in which it, *inter alia*, interpreted certain statutes within NRS Chapter 116, in particular NRS 116.3116, and their importance in the Department's regulation of collection agencies. The primary question presented to the Department was as follows:

> Pursuant to NRS 116.3116, what portion of the lien, if any, is superior to the unit's first mortgage lender's security interest ("super priority lien") and may the sum total of the super priority lien amount, whether it be comprised of assessments, fees, costs of collection or other charges, ever exceed 9 times the monthly assessment amount for common expenses based on the periodic budget adopted by the association pursuant to NRS [ ]116.3115 . . . ?

In addressing this question, the Department noted that the interpretation of provisions within NRS Chapter 116 was required but that it would only address this chapter as it related to collection agencies and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f (1996). The Department then went on to reference NRS 649.020(3)(a), stating that a collection agency includes

> "a community manager while engaged in the management of a common-interest community or the management of an association of a condominium hotel if the community manager, or any employee, agent or affiliate of the community manager, performs or offers to perform any act associated with the foreclosure of a lien pursuant to NRS 116.31162 to 116.31168, inclusive, or 116B.635 to 116B.660, inclusive."

Because the Department believed that homeowners' associations had not sufficiently fixed the amount of fees that collection agencies may charge, the Department concluded that the determination of the additional sums would have to be authorized by law in order to be collected by the collection agencies. In coming to its

conclusion as to what fees were authorized by law, the Department noted that any penalties, fees, and charges are enforceable as assessments, and that in order for a lien to maintain super priority,[2] it cannot be in an amount in excess of the value of the assessments that would have become due in a nine-month period preceding the institution of an action to enforce the lien. Furthermore, the Department found that in order for the additional fees to be valid, the fees must be approved by the homeowners' associations, not added independently by the collection agency. The Department concluded that

> [a] collection agency is limited to the total of nine (9) months of assessments for common charges on the amount it can collect pursuant to priority status provided in NRS 116.3116(2). This nine (9) month cap includes any additional fees, charges, interest, costs, penalties or fines which the association could apply towards a lien pursuant to NRS 116.3116.

> . . . Additionally, prior to the imposition of any additional fees, charges, penalty and interest to any assessment or fine by a collection agency, the association must expressly approve the fees, charges, penalty and interest pursuant to the provisions in its governing documents.

Less than one month after the Department issued its opinion, NAS filed its complaint and motion for preliminary injunction in district court. As prominent collection agencies, NAS has been involved in several lawsuits to determine its rights with respect to the types of liens described above and NAS's priority in the chain of title.

NAS's complaint was prompted by the threat that the Department would enforce its advisory opinion. NAS primarily argued that the Department lacked jurisdiction to issue advisory opinions interpreting provisions of NRS Chapter 116. In support of its request for a preliminary injunction, NAS argued that because the Department did not have jurisdiction to issue the advisory opinion, NAS would likely succeed on the merits of the case, and if the opinion was enforced, it would suffer irreparable harm.

Following a hearing, the district court granted NAS's request for a preliminary injunction. In its order, the court determined that neither NRS Chapter 649 nor NRS Chapter 116 authorized the Department to interpret the provisions of NRS Chapter 116. Conversely, the district court found that the Real Estate Division of

---

[2]Priority status over certain types of encumbrances is granted to liens against units for delinquent assessments. NRS 116.3116(2); NRS 116.093 (defining "unit").

the Department of Business and Industry and the Commission for Common Interest Communities and Condominium Hotels (CCICCH) have exclusive jurisdiction to interpret and administer the provisions of NRS Chapter 116. Therefore, the court determined that only the Real Estate Division and the CCICCH could decide what fees homeowners' associations could add to the total assessments in filing a lien. Having determined that the Department lacked jurisdiction to issue the opinion, the district court concluded that NAS had sustained its burden to prove a likelihood of success on the merits. The court then found that NAS would suffer irreparable harm if the injunction did not issue because NAS would be faced with the threat of future litigation, public records showing that it had been subject to actions filed by the Department, and, finally, the prospect of temporarily losing its license to carry on collection activities. The Department now appeals the district court's order granting the preliminary injunction.

## DISCUSSION

The Department contends that the district court abused its discretion in enjoining it from enforcing its advisory opinion. The Department argues that NAS failed to show that it had a likelihood of success on the merits because the Department had jurisdiction to issue the advisory opinion. Further, it argues that NAS would not suffer irreparable harm because the administrative disciplinary process is a requirement of holding a license and irreparable harm cannot be based on the filing of an administrative complaint. We disagree.

### Preliminary injunction

A preliminary injunction is proper when the moving party can demonstrate that it has a reasonable likelihood of success on the merits and that it will suffer irreparable harm for which compensatory damages would not suffice. *See* NRS 33.010; *University Sys. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). We review a district court's grant of a preliminary injunction for an abuse of discretion and will reverse only when the district court's decision was based ''on an erroneous legal standard or on clearly erroneous findings of fact.'' *Boulder Oaks Cmty. Ass'n v. B & J Andrews*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009) (internal quotations omitted). However, when the underlying issues in the motion for preliminary injunction ''involve[ ] questions of statutory construction, including the meaning and scope of a statute, we review . . . those questions [of law] de novo.'' *Nevadans for Prop. Rights v. Sec'y of State*, 122 Nev. 894, 901, 141 P.3d 1235, 1240 (2006).

*Reasonable likelihood of success on the merits*

The Department's primary contention on appeal is that NAS failed to show that it had a likelihood of success on the merits because the Department had jurisdiction to issue an advisory opinion regarding NRS Chapter 116. In order for us to determine whether the Department had jurisdiction to issue such an advisory opinion, we must review several sections from NRS Chapters 649 and 116.

## NRS Chapter 649

Under NRS 649.051, the commissioner of the Department is granted authority to administer and enforce the provisions of NRS Chapter 649 and may adopt "such regulations as may be necessary to carry out the provisions of this chapter." NRS 649.053. The commissioner is also responsible for the issuance of licenses allowing collection agencies to operate within the state. NRS 649.075(1). NRS 649.375 describes which collection agency practices are prohibited. As such practices pertain to this case, collection agencies may not "[c]ollect or attempt to collect any interest, charge, fee or expense incidental to the principal obligation unless . . . such [sums] a[re] authorized by law or [have been] agreed to by the parties." NRS 649.375(2)(a)-(b). And, if such violations occur, the Department may impose fines or, in more severe cases, suspend or revoke the license of a collection agency. NRS 649.395(1)-(3). Finally, as defined in NRS 649.020(3)(a), a collection agency may include a community manager[3] "if the community manager, or any employee, agent or affiliate of the community manager, performs or offers to perform any act associated with the foreclosure of a lien pursuant to NRS 116.31162 to 116.31168, inclusive, or 116B.635 to 116B.660, inclusive."

## NRS Chapter 116

Article 3 of Chapter 116 contains provisions for the management of common-interest communities. Unit owners' associations may "hire and discharge managing agents and other employees, agents and independent contractors," and may also "make contracts and incur liabilities." NRS 116.3102(1)(c), (e). NRS 116.310313(1) also allows "[a]n association [to] charge a unit's owner reasonable fees to cover the costs of collecting any past due obligation." This section also provides that "[t]he [CCICCH] shall adopt regulations establishing the amount of the fees that an association may charge pursuant to this section." *Id.* (emphasis added). Additionally,

---

[3]A community manager is "a person who provides for or otherwise engages in the management of a common-interest community or the management of an association of a condominium hotel." NRS 116.023.

[t]he provisions of th[e] section apply to any costs of collecting a past due obligation charged to a unit's owner, regardless of whether the past due obligation is collected by the association itself or by any person acting on behalf of the association, including, without limitation, . . . a community manager or a collection agency.

NRS 116.310313(2). The language of the two sections is clear in that the CCICCH is solely responsible for determining the type and amount of fees that may be collected by associations.

In its order granting the preliminary injunction, the district court pointed to additional statutes in NRS Chapter 116, which it believed supported a finding that only the Real Estate Division and the CCICCH could adopt regulations to supplement, as well as interpret, the statutory provisions of the chapter. NRS 116.615 provides, in pertinent part, for the administration and regulation of the chapter as follows:

> 1. The provisions of this chapter *must* be administered by the [Real Estate] Division, subject to the administrative supervision of the Director of the Department of Business and Industry.
> 2. [The CCICCH] and the [Real Estate] Division may do all things necessary and convenient to carry out the provisions of this chapter, including, without limitation, prescribing such forms and adopting such procedures as are necessary to carry out the provisions of this chapter.
> 3. [The CCICCH], or the [Real Estate] Administrator with the approval of the [CCICCH], may adopt such regulations as are necessary to carry out the provisions of this chapter.

(Emphasis added.) The language of this provision is clear that the CCICCH and the Real Estate Division are responsible for regulating and administering the chapter. There is no provision granting any other commission or department the authority to regulate or interpret the language of the chapter. NRS Chapter 116 also addresses the issuance of advisory opinions, stating that "[t]he [Real Estate] Division shall provide by regulation for the filing and prompt disposition of petitions for declaratory orders and advisory opinions as to the applicability or interpretation of: (a) [a]ny provision of this chapter or chapter 116A or 116B of NRS." NRS 116.623(1)(a).

The language of NRS 116.615 and NRS 116.623 is clear and unambiguous. Thus, we apply a plain reading. *See Westpark Owners' Ass'n v. Dist. Ct.*, 123 Nev. 349, 357, 167 P.3d 421, 427 (2007). We will also read NRS Chapter 116 and NRS Chapter 649 in a way that harmonizes them as a whole. *Southern Nev. Home-*

*builders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). Based on a plain, harmonized reading of these statutes, the responsibility of determining which fees may be charged, the maximum amount of such fees, and whether they maintain a priority, rests with the Real Estate Division and the CCICCH. *See* NRS 116.615; NRS 116.623. Because the Real Estate Division is charged with adopting appropriate regulations concerning NRS Chapter 116, the regulations regarding the fees chargeable by community managers would then become "authorized by law" as required by NRS 649.375(2)(a).[4] *See* NRS 116.615; NRS 116.623. Allowing the Real Estate Division to adopt regulations concerning the amount collectible by community managers and allowing the Department to enforce those regulations, if the community managers act in derogation of those regulations, harmonizes the chapters in a way to give each its full effect. *See Southern Nev. Homebuilders*, 121 Nev. at 449, 117 P.3d at 173. Furthermore, the Department's enforcement of the regulations adopted by the Real Estate Division avoids the absurd result of having a regulation without someone with authority to enforce it because the Real Estate Division is not charged with enforcing its regulations. *See id.* We therefore determine that the plain language of the statutes requires that the CCICCH and the Real Estate Division, and no other commission or division, interpret NRS Chapter 116. Consequently, the Department lacked jurisdiction to issue an advisory opinion interpreting NRS Chapter 116. Therefore, the district court did not abuse its discretion in determining that NAS had a likelihood of success on the merits.

### Irreparable harm

The district court found that not only would the instigation of disciplinary action against NAS by the Department be harmful in and of itself, but also that any such disciplinary action would have the added harmful effect of placing the matter in the public record. It also found that even a temporary revocation of NAS's collection

---

[4]The Department also argues that it had implied authority to examine NRS Chapter 116. Although it is true that "wherever a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied," *Checker, Inc. v. Public Serv. Comm'n*, 84 Nev. 623, 629-30, 446 P.2d 981, 985 (1968), this rule of statutory construction is inapplicable in this situation because the Department can rely on the interpretations and regulations of the Real Estate Division concerning NRS Chapter 116. The Department would not need to act on its own to properly effectuate its statutory powers. Further, if the Department determines that certain regulations should be enacted or that an interpretation of a provision is required, nothing prevents it from requesting the CCICCH and/or the Real Estate Division to so act.

license could lead to irreparable harm because it would be unable to conduct its business.

We have determined that "acts committed without just cause which unreasonably interfere with a business or destroy its credit or profits, may do an irreparable injury." *Sobol v. Capital Management*, 102 Nev. 444, 446, 726 P.2d 335, 337 (1986); *see also Com. v. Yameen*, 516 N.E.2d 1149, 1151 (Mass. 1987) ("A licensee whose license has been revoked or suspended immediately suffers the irreparable penalty of loss of [license] for which there is no practical compensation." (alteration in original) (internal quotations omitted)).

Here, the district court found that the mere act of filing a disciplinary action against NAS would cause irreparable harm. In its findings, the district court explained that it was possible for the Department to revoke NAS's license without a hearing under its powers pursuant to NRS 649.395(2)(a), which allows the Department to revoke a collection license "without notice and hearing if . . . necessary for the immediate protection of the public," and "[t]he licensee is afforded a hearing to contest the suspension or revocation within 20 days" thereafter. NRS 649.395(2)(b). Thus, if such an instance occurred, NAS would be unable to conduct any business during that time, not just on those liens that may contain unauthorized fees. The district court properly determined that the inability to conduct any business would cause irreparable harm. *Sobol*, 102 Nev. at 446, 726 P.2d at 337. It was within the district court's discretion to find that NAS would suffer irreparable harm because it was threatened with the prospect of losing its license to conduct business. Therefore, NAS sustained its burden, under NRS 33.010, to prove that it had a reasonable likelihood of success on the merits and that it would suffer irreparable harm for which compensatory damages would not suffice. Consequently, we determine that the district court did not abuse its discretion in granting NAS's request for injunctive relief, and we therefore affirm its order.[5]

DOUGLAS and PARRAGUIRRE, JJ., concur.

---

[5]We have reviewed all of the Department's remaining contentions and conclude that they are without merit.