138 Nev., Advance Opinion 45

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NATHANIEL HELTON, AN INDIVIDUAL,<br>Appellant,<br>vs.<br>NEVADA VOTERS FIRST PAC, A NEVADA COMMITTEE FOR POLITICAL ACTION; TODD L. BICE, IN HIS CAPACITY AS THE PRESIDENT OF NEVADA VOTERS FIRST PAC; AND BARBARA K. CEGAVSKE, IN HER CAPACITY AS NEVADA SECRETARY OF STATE,<br>Respondents. | No. 84110 |



FILED

JUN 28 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a challenge to a ballot measure. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed.*

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager, John Samberg, Daniel Bravo, and Eric Levinrad, Las Vegas; Elias Law Group LLP and Marc E. Elias and Elisabeth C. Frost, Washington, D.C.; Elias Law Group LLP and Lindsay McAleer, Seattle, Washington, for Appellant.

Aaron D. Ford, Attorney General, Craig A. Newby, Deputy Solicitor General, and Laena St-Jules, Deputy Attorney General, Carson City, for Respondent Secretary of State.

Pisanelli Bice PLLC and Todd L. Bice, Jordan T. Smith, and John A. Fortin, Las Vegas, for Respondents Nevada Voters First PAC and Todd L. Bice.

22-20392

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, J.:

The Nevada Constitution guarantees to the people the power to propose legislation and constitutional amendments by initiative petition. Initiative petitions are subject to several requirements, some set forth in statute and some set forth in Article 19 of the Nevada Constitution. In this appeal, we address three of them: the single-subject requirement, the description-of-effect requirement, and the funding requirement for a proposal that makes an appropriation or requires the expenditure of money. First, we clarify that even if an initiative petition proposes more than one change to Nevada law, it may still meet the single-subject requirement, provided that the proposed changes are functionally related and germane to each other and a single subject. The initiative petition at issue here meets that requirement. Although it proposes two changes (open primary elections and ranked-choice general elections for specified officeholders), both changes are functionally related and germane to each other and the single subject of the framework by which specified officeholders are presented to voters and elected. Second, we conclude that the initiative petition's description of effect is straightforward, succinct, and nonargumentative. Finally, we conclude that appellant failed to demonstrate that the proposal requires the expenditure of money without providing a funding source. Thus, we affirm the district court's order rejecting appellant's complaint challenging the initiative petition.

SUPREME COURT
OF
NEVADA

(O) 1947A

## FACTS AND PROCEDURAL HISTORY

Respondent Nevada Voters First PAC (NVF) seeks to place the Better Voting Nevada Initiative (BVN Initiative) on the ballot for the upcoming general election. If approved by voters, the BVN Initiative would add two sections to Article 15 of the Nevada Constitution. One of the proposed new sections addresses primary elections for partisan offices.[1] It would change Nevada's primary elections for partisan offices so that any voter could vote in the primary, regardless of party affiliation, and the top five candidates from the primary would proceed to the general election. On the ballot, the name of the political party with which the candidate is registered would appear next to the candidate's name, and if the candidate is not registered with a political party, the words "no political party" would appear. Further, if there is a tie for fifth place, "the candidate who proceeds to the general election for partisan office [would] be decided by lot." The other new section addresses general elections for partisan offices. It would change those elections to a ranked-choice voting format in which voters would rank the candidates by preference. If one candidate does not get more than 50% of the first-choice votes, the candidate with the lowest number of first-choice votes would be eliminated and the second-choice votes of his or her voters would be counted. This tabulation process would continue in rounds until one candidate gets more than 50% of the votes and is declared the winner.

-------------------

[1]The BVN Initiative defines partisan offices as (1) U.S. Senator, (2) U.S. Representative, (3) Governor, (4) Lieutenant Governor, (5) Attorney General, (6) Secretary of State, (7) State Treasurer, (8) State Controller, and (9) State Legislators.

The following description of effect appears on the signature pages for the petition:

> If enacted, this initiative changes Articles 5 and 15 of Nevada's Constitution for Congressional, Governor, Lieutenant Governor, Attorney General, Secretary of State, Treasurer, Controller and State Legislator elections, eliminating partisan primaries and establishing an open top-five primary election and a rank-choice voting general election.
>
> For these offices, all candidates and voters participate in a single primary election regardless of party affiliation or non-affiliation. The top five finishers advance to the general election, and the general election winner is determined by rank-choice voting:
>
> - General election voters rank the candidates in order of preference from first to last, if they wish to rank more than their first preference.
>
> - As traditionally, a candidate receiving first-choice votes of more than 50% wins.
>
> - If no candidate is the first choice of more than 50%, the candidate with the fewest votes is eliminated. And each voter who had ranked the now-eliminated candidate as their first choice, has their single vote transferred to their next highest choice candidate.
>
> - This tabulation process repeats until the one candidate with more than 50% support is determined as the winner.
>
> The Legislature must adopt implementing legislation by July 1, 2025.

Appellant Nathaniel Helton filed a complaint challenging the BVN Initiative and seeking to enjoin respondent Secretary of State from placing the BVN Initiative on the 2022 general election ballot. The district

Supreme Court
OF
Nevada

(O) 1947A

4

court rejected Helton's challenge, concluding that (1) the BVN Initiative embraces a single subject, (2) there is nothing misleading in the description of effect, and (3) there was no evidence the BVN Initiative creates an unfunded mandate for the expenditure of money.[2] Helton now appeals.

## DISCUSSION

Courts will consider challenges to an initiative petition preelection in limited circumstances, such as when those challenges are based on the petition's compliance with the single-subject requirement, the statutory requirement for the description of effect, or the preclusion against unfunded mandates. *Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 883-84, 141 P.3d 1224, 1228 (2006). The party challenging the initiative petition bears the burden of demonstrating the proposed initiative is clearly invalid. *See Las Vegas Taxpayer Accountability Comm. v. City Council of Las Vegas*, 125 Nev. 165, 176, 208 P.3d 429, 436 (2009) (holding that the party challenging a ballot measure "bear[s] the burden of demonstrating that the measures are clearly invalid"). Because the district court resolved the challenge to the initiative in the absence of any factual dispute, our review is de novo. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006).

*The BVN Initiative complies with the single-subject requirement*

Helton argues that the BVN Initiative violates the single-subject requirement because it presents two separate policy changes that

---

[2]The district court required Helton to provide an alternate description of effect. Because Helton does not argue on appeal that his proposed description of effect should be used and because this court need only consider the validity of NVF's description of effect, we need not consider Helton's proposed description of effect.

could be brought in separate initiative petitions: (1) nonpartisan open primaries and (2) general election ranked-choice voting. He contends each change is so distinct that any characterization of the petition's subject would have to be excessively general to encompass both changes. Further, he asserts that by including two separate policy changes, the petition improperly logrolls them to improve the chance that voters will approve both. We disagree and clarify that even if an initiative petition proposes more than one change, each of which could be brought in separate initiative petitions, the proper consideration is whether the changes are functionally related and germane to each other and the petition's subject.

NRS 295.009(1) provides that "[e]ach petition for initiative or referendum must . . . [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." Subsection 2 of that statute explains that an initiative "embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative . . . are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative." NRS 295.009(2). The single-subject requirement "facilitates the initiative process by preventing petition drafters from circulating confusing petitions that address multiple subjects." *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 902, 141 P.3d 1235, 1240 (2006). Thus, "the single-subject requirement helps both in promoting informed decisions and in preventing the enactment of unpopular provisions by attaching them to more attractive proposals or concealing them in lengthy, complex initiatives (*i.e.*, logrolling)." *Las Vegas Taxpayer*, 125 Nev. at 176-77, 208 P.3d at 436-37.

In considering single-subject challenges, the court must first determine the initiative's purpose or subject and then determine if each provision is functionally related and germane to each other and the initiative's purpose or subject.[3] *See Nevadans for Prop. Rights*, 122 Nev. at 907-09, 141 P.3d at 1243-45; *Las Vegas Taxpayer*, 125 Nev. at 180, 208 P.3d at 439. "To determine the initiative's purpose or subject, this court looks to its textual language and the proponents' arguments." *Las Vegas Taxpayer*, 125 Nev. at 180, 208 P.3d at 439. The court also will look at whether the description of effect articulates an overarching purpose and explains how provisions relate to a single subject. *Id.*

The BVN Initiative's single subject is the *framework* by which specified officeholders are presented to voters and elected. The purpose articulated by the description of effect and the textual language in the BVN Initiative support this characterization of the initiative's subject. This subject is distinctly different from, for instance, the *mechanics* of how voters vote, which would include early voting, absentee ballots, machine voting, and paper ballots, among other things. Thus, this subject is not excessively broad given that the initiative's proposals only apply to the framework of the election of partisan officeholders as defined in the initiative petition.

---

[3]Our dissenting colleagues express concern with how the majority has characterized the subject of the initiative petition, implying that the majority first determined the interrelation of the proposed changes and then sought to identify a subject. This concern is unwarranted. Under our de novo review process, we start anew in evaluating the initiative petition and it is our obligation to first independently identify the subject, not just adopt the argument of one party or the other. Here, our detailed review revealed the subject to clearly be as we've stated, which is the framework under which certain candidates for office are presented to voters and elected.

Having identified the BVN Initiative's subject, we next consider whether each provision of the initiative petition functionally relates and is germane to each other and that subject.

Both changes proposed in the BVN Initiative concern the election process in Nevada and more specifically how candidates for the specifically defined partisan offices are presented to voters and elected. The fact that the two changes concern different steps in that process—the primary election and the general election—does not make them two separate subjects. Further, the changes are functionally related and germane to each other in that they work together to reform Nevada's election process and the effectiveness of one change would be limited without the other. For example, absent the open-primary change, the ranked-choice-voting change would have little practical effect because the closed primary system makes it more likely that voters would have only two candidates to choose from in the general election—the candidates selected by the two major parties in the closed primary election—such that voters would have no need to rank the general election candidates beyond their first choice. Thus, the changes are necessarily connected and pertaining to each other and to the subject of how specified officeholders are presented to voters and elected.

Additionally, although the petition proposes two changes, they do not constitute logrolling because they are interrelated. As it has been described in connection to the single-subject requirement, logrolling "occurs when two or more *completely separate provisions* are combined in a petition, one or both of which would not obtain enough votes to pass without the other." *Nevadans for Prop. Rights*, 122 Nev. at 922, 141 P.3d at 1254 (Hardesty, J., concurring and dissenting) (emphasis added). Thus, our

concern with logrolling in this context cannot be separated from the single-subject requirement—the mere fact that an initiative petition proposes more than one change does not automatically mean the proponents are guilty of logrolling, provided that the changes are functionally related and germane to each other and the initiative petition's subject or purpose. To conclude otherwise would only serve to frustrate the people's initiative power. Here, as described above, the two changes are necessarily connected to each other and the initiative's subject. And Helton acknowledges that it is impossible to determine which of the two changes is the primary, and thus, the more popular, change proposed. It thus does not appear that the proponents are trying to hide an unrelated and unpopular change within the initiative petition with the hope that the electorate decides the more popular change is worth the adoption of the less popular one.

We are not the only court to have considered whether an initiative petition proposing open primaries and a ranked-choice general election complies with a single-subject requirement. In *Meyer v. Alaskans for Better Elections*, the Supreme Court of Alaska rejected a single-subject challenge to a similar initiative petition. 465 P.3d 477, 499 (Alaska 2020). The Alaska court concluded that the proposed changes "relate to the elections process and share the common thread of reforming current election laws." *Id.* In fact, the Alaska court noted that the changes establishing open primaries and ranked-voting general elections are clearly interrelated "because they together ensure that voting does not revert to a two-candidate system." *Id.* We find the Alaska court's analysis persuasive

and supportive of our conclusion that the BVN Initiative's two proposed changes comply with Nevada's single-subject requirement.[4]

Thus, we conclude that even though the BVN Initiative proposes two changes, because those changes are functionally related and germane to each other and the subject of the framework of how specified officeholders are presented to voters and elected, the initiative does not violate the single-subject requirement.[5]  Accordingly, we conclude the district court did not err in rejecting Helton's request for injunctive relief based on a violation of the single-subject requirement.

---

[4]While we recognize that Alaska's single-subject requirement is slightly different from our own, *Meyer*, 465 P.3d at 484, 498, we find *Meyer* to be persuasive in this instance.

[5]Our dissenting colleagues, citing to *Nevadans for Property Rights*, 122 Nev. at 902, 141 P.3d at 1241, have opined that if *changes* in an initiative petition could be brought in two separate petitions, then the single-subject requirement demands that they be so brought. We disagree. *Nevadans for Property Rights* held only that bringing multiple *subjects* in a single initiative petition was improper, and such holding did not violate the people's initiative rights because a second subject can be addressed by creating a second petition. *Id.* A subject is decidedly different than a change. A subject is the overall thing being discussed, whereas a change is the alteration or modification of existing law. *See Subject, Black's Law Dictionary* (11th ed. 2019) (defining "subject" as "[t]he matter of concern over which something is created"); *Change, Merriam-Webster's International Dictionary of the English Language* (2d ed. 1959) (defining "change" as to alter or "to make different in some particular" way, among other definitions).  Here, the initiative's proposed changes are functionally related and germane to each other and the initiative's subject and are therefore in accord with NRS 295.009 and our holding in *Nevadans for Property Rights*.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

*The description of effect complies with NRS 295.009*

Next, Helton argues that the BVN Initiative's description of effect is legally insufficient because it misstates or neglects to mention many of its most significant ramifications. Specifically, Helton asserts that the description of effect (1) fails to address party affiliation and how the party listed on the ballot next to the candidate's name does not indicate support from that party; (2) minimizes the changes to the general election by inaccurately stating that currently a candidate must receive 50% of the vote to win, when Nevada has a plurality-to-win system; (3) fails to mention that if a voter does not rank all of the candidates, their vote may not count; and (4) fails to address the training and voter outreach necessary for polling officials and the public to understand the new system.

NRS 295.009(1)(b) requires that each signature page of an initiative petition include a description of the initiative's effect that is "not more than 200 words." The description of effect "facilitates the constitutional right to meaningfully engage in the initiative process by helping to prevent voter confusion and promote informed decisions." *Las Vegas Taxpayer*, 125 Nev. at 177, 208 P.3d at 437 (internal quotation marks omitted). A description of effect "must be a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to reach those goals." *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37, 293 P.3d 874, 876 (2013). Because the description of effect is limited to only 200 words, it "cannot constitutionally be required to delineate every effect that an initiative will have; to conclude otherwise could obstruct, rather than facilitate, the people's right to the initiative process." *Id.* at 37-38, 293 P.3d at 876. Further, "[i]n determining whether a ballot initiative proponent has complied with NRS 295.009, it is not the function of this court to judge the wisdom of the proposed initiative."

SUPREME COURT
OF
NEVADA

(O) 1947A

11

*Id.* at 41, 293 P.3d at 878 (internal quotation marks omitted). The opponent of the initiative bears the burden of demonstrating that the description of effect is insufficient. *Id.* at 42, 293 P.3d at 879.

Helton did not meet his burden of demonstrating the description of effect included in the initiative petition is statutorily inadequate. Because the statute limits the description of effect to 200 words, the description necessarily will be short and will not address or thoroughly explain every provision in, or possible ramification of, the initiative. The description of effect included with the BVN Initiative petition briefly, but clearly and nonargumentatively, summarizes the initiative petition's provisions and how those provisions will achieve the initiative's goal. We address Helton's specific arguments below.

First, Helton suggests that the description of effect does not adequately explain the effect of the change to the primary election system, particularly with respect to the candidates self-identifying their political party. The description of effect provides that the BVN Initiative "eliminat[es] partisan primaries" so that all candidates and voters can participate in the primary election "regardless of party affiliation or non-affiliation." This is a succinct and nonargumentative way of explaining the elimination of partisan primaries, which puts the public on notice of the change. And contrary to Helton's suggestion, we believe the public is smart enough to understand that when a candidate self-designates a party preference, this does not mean that party has chosen or endorsed the candidate. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 454 (2008) ("There is simply no basis to presume that a well-informed

electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate.").

Next, Helton argues that the description of effect is misleading because it states that "traditionally, a candidate receiving first-choice votes of more than 50% wins." It is true that under Nevada's current plurality voting system, a candidate may win by receiving the most votes even if their total number of votes does not exceed 50%. But it is also true that under the plurality system, a candidate who receives more than 50% of the vote is the winner. Thus, even though there may have been a better way to explain Nevada's current plurality system and the ways in which ranked-choice voting would change that system, we are not convinced that the description here does such a poor job that it violated NRS 295.009(1)(b), particularly given the statute's 200-word limit. *See Las Vegas Taxpayer*, 125 Nev. at 183, 208 P.3d at 441 (explaining that an initiative's "summary and title need not be the best possible statement of a proposed measure's intent" (internal quotation marks omitted)). Because the description of effect is not incorrect in its statement that currently a candidate who receives 50% of the vote wins, the description of effect is not misleading in this respect.

Lastly, Helton argues that the description of effect is inadequate because it fails to mention what happens when a voter does not rank all of the candidates (their vote may not count) and does not address the training and outreach that may be necessary to educate people on the new system. Just as we believe the public is smart enough to understand what it means when a candidate self-designates his or her party affiliation, we believe the public is smart enough to understand that with ranked-

choice voting, if all the candidates a voter ranked are eliminated, that voter's vote will not go toward any of the remaining candidates the voter did not rank. Additionally, while some voter education may be required if voters approve the initiative petition, that education is not what the initiative petition is designed to achieve or how the initiative petition intends to reach its goals. It therefore need not be included in the description of effect. *See Educ. Initiative*, 129 Nev. at 37, 293 P.3d at 876 (explaining that the description of effect is intended to summarize "what the initiative is designed to achieve and how it intends to reach those goals). Given the 200-word limitation on the description of effect, the omission of these two points cannot invalidate the entire initiative. *See id.* at 38, 293 P.3d at 876 (providing that an initiative proponent "cannot constitutionally be required to delineate every effect that an initiative will have").

With so few words in which to explain the effect of an initiative petition, a challenger will always be able to find some ramification of or provision in an initiative petition that the challenger feels is not adequately addressed in the description of effect.[6] That is why the sufficiency of a

---

[6]Our dissenting colleagues have opined that the majority has relaxed the standard for initiative descriptions of effect. We disagree. The description of effect must be evaluated in the context of its word limit and its purpose. The word limit necessarily restricts the amount of detail that can go into the description, and judicial review must account for the inherent limitations occasioned by that. The purpose of the description of effect is to inform signatories to the initiative petition about the petition's subject. It does not serve as the full, detailed explanation, including arguments for and against, that voters receive prior to a general election. To that end, as we noted in *Education Initiative*, the description of effect does not need to address every possible effect of an initiative, especially since once enough signatures have been gathered to place the initiative on the ballot, the Secretary of State will draft a neutral summary of the

SUPREME COURT
OF
NEVADA

(O) 1947A

14

description of effect depends not on whether someone else could have written it better but instead on whether, as written, it is "a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to reach those goals." *Id.* at 37, 293 P.3d at 876. Helton has not demonstrated that the BVN Initiative's description of effect fell short of that standard. Accordingly, we conclude the district court did not err in denying Helton's request for injunctive relief based on an insufficient description of effect.

*Helton failed to demonstrate the BVN Initiative proposes a change requiring an appropriation or the expenditure of money*

Lastly, Helton contends that the BVN Initiative must be invalidated because the changes it proposes will require the expenditure of money and the petition includes no provisions to fund that expenditure, which violates Article 19, Section 6 of the Nevada Constitution. The district court concluded that Helton's assertion that the BVN Initiative would require an expenditure of money to implement was unsupported speculation.

As we have explained above, the burden of demonstrating the invalidity of an initiative falls on the challenger. *Las Vegas Taxpayer*, 125 Nev. at 176, 208 P.3d at 436. Below, Helton offered some references to the expected costs to implement similar changes in Alaska and New York City, but he did not provide any evidence regarding the expected costs to make the proposed changes to the Nevada election system. And although Helton

---

initiative, which does not have a word limit, and committees will draft arguments for and against the passage of the initiative, both of which will be placed on the ballot, instead of the description of effect. *Id.* at 40, 42, 293 P.3d at 878-79.

recently asked this court to take judicial notice of a financial impact statement published by the Fiscal Analysis Division of the Legislative Counsel Bureau, we declined to do so because that statement was never presented to the district court and NVF disputes the facts in the statement. *See Helton v. Nev. Voters First PAC*, No. 84110 (Nev. June 6, 2022) (Order Denying Motion); *see also Carson Ready Mix v. First Nat'l Bank*, 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (explaining that this court's review is limited to the record made in and considered by the district court). Helton's failure to provide evidence showing that the proposals in the BVN Initiative require the expenditure of money defeats his argument in this regard. Accordingly, we conclude the district court properly denied Helton's unfunded-mandate challenge to the BVN Initiative.

## CONCLUSION

The district court did not err in denying Helton's challenge to the BVN Initiative and his request for an injunction preventing the Secretary of State from placing the BVN Initiative on the ballot. An initiative petition may propose more than one change if those changes are functionally related and germane to each other and the initiative's subject. Because the BVN Initiative's proposed changes are functionally related and germane to each other and the subject of the framework of how specified officeholders are presented to voters and elected, the initiative does not violate the single-subject requirement. Further, as the BVN Initiative's description of effect is a straightforward, succinct, and nonargumentative summary of the goals the initiative is designed to achieve and how it intends to reach those goals, it has met the statutory requirements for a description

of effect. Lastly, Helton has not demonstrated the BVN Initiative proposes a change that requires the expenditure of money. Accordingly, we affirm the district court's order denying Helton's complaint for injunctive relief.

_____, J.
Herndon

We concur:

_____, C.J.
Parraguirre

_____, J.
Silver

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

CADISH, J., with whom HARDESTY and STIGLICH, JJ., agree, dissenting:

I would reverse the district court's denial of Nathaniel Helton's request for injunctive relief because the Better Voting Nevada (BVN) Initiative clearly violates the single-subject requirement for initiative petitions and has an inadequate description of effect. Thus, I respectfully dissent.

*The BVN Initiative does not meet the single-subject requirement*

The BVN Initiative includes more than one subject. First, it proposes changing Nevada's primary election system to an open primary. Second, it proposes changing Nevada's general election system to a ranked-choice voting process. Thus, it proposes making one type of change to primary elections and a different type of change to general elections. Because the changes are distinct and affect different aspects of the election process, the BVN Initiative goes beyond a single subject. Perhaps if the BVN Initiative was making the same type of change to each election, it could qualify as a single subject. But, because each change is different and is only applied to one of the two types of elections affected, the initiative petition violates the single-subject requirement.

Further, the single subject asserted by Nevada Voters First PAC (NVF), "how specified officeholders are elected," is excessively broad. While this subject would cover both of the changes proposed in the BVN Initiative, it could also cover a plethora of other changes. For example, under such a broad subject, an initiative proponent could also propose changes to early voting, polling places, and requirements for election officials. If an initiative petition proposed changes relating to all of these items, it would clearly be too broad to qualify as a single subject. The same

is true for the BVN Initiative, which proposed one type of change to the primary election and a completely different type of change to the general election.

Thus, the BVN Initiative is like the initiative petition with an excessively general subject this court invalidated in *Las Vegas Taxpayer Accountability Committee v. City Council of Las Vegas*, where the initiative proponents asserted that the initiative's single subject was "voter approval of use of taxpayer funds to finance large new development projects." 125 Nev. 165, 179, 208 P.3d 429, 438 (2009) (quoting the purported single subject articulated by appellants in that matter). That initiative required voter approval of certain City of Las Vegas lease-purchase agreements and also substituted in the voters as the legislative body that oversees redevelopment projects. *Id.* at 170, 208 P.3d at 432. This court concluded that because the articulated single subject was excessively general, and because there was not a clear overarching purpose connecting the initiative's two provisions, the initiative violated the single-subject requirement. *Id.* at 180-82, 208 P.3d at 439-40. The subject of the BVN Initiative (how specified officeholders are elected) is similarly excessively general, and it is impossible to determine a clear overarching purpose. No matter how many times one reads the BVN Initiative, one cannot discern which of the two changes is the initiative's primary purpose.

The majority even recognizes that NVF's proposed subject is insufficient to comply with the single-subject requirement, as the majority fashioned its own subject for the BVN Initiative: the *framework* by which specified officeholders are presented to voters and elected. In doing so, the majority had to stretch to find a broad enough subject to cover both distinct proposed changes to Nevada's election process, while also attempting to

narrow the subject sufficiently to comply with the single-subject requirement. Such application of the single-subject requirement is flawed. A court should not first determine that the proposed changes are related enough that they should be permitted to proceed together and then search for an overarching subject that covers both the changes. Indeed, the court should not need to search for an appropriate subject, as the subject should be clear from the initiative petition's textual language and description of effect. *See id.* at 180, 208 P.3d at 439 (explaining that in determining an initiative's subject, a court will look to the text of the initiative petition, the proponent's arguments, and whether the description of effect articulates an overarching subject). In this case, any reader of the BVN Initiative and its description of effect would not be able to discern a clear, single subject, and any effort to describe what the initiative proposes inevitably involves describing two distinct changes—open primary elections and ranked-choice voting in the general election. It is not for the court to divine a subject for the initiative, particularly when it results in selecting a topic as broad as "the *framework* by which specified officeholders are presented to voters and elected." In my view, this is simply too broad to satisfy the purpose of NRS 295.009's single-subject rule.

Additionally, in its application of the single-subject requirement, the majority ignores the purpose behind that requirement. NRS 295.009's single-subject requirement was adopted to ensure the electorate was not presented with confusing or misleading petitions by limiting each initiative petition to a single subject. *See Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 906, 141 P.3d 1235, 1243 (2006) (providing that the purpose behind the requirement was "preventing the public from being confronted with confusing or misleading petitions and

SUPREME COURT
OF
NEVADA

(O) 1947A

3

preventing proposals that would not otherwise become law from being passed solely because they are attached to more popular measures"). The legislative history of NRS 295.009 clearly demonstrates that the single-subject requirement was adopted to preclude initiative petitions that present multiple distinct changes. *See* Hearing on S.B. 224 Before the Assemb. Comm. on Elections, Procedures, Ethics, and Constitutional Amendments, 73d Leg., at 4 (Nev., May 3, 2005) (statement of Senator Randolph J. Townsend) (explaining that the purpose of the single-subject requirement was to prevent what had happened in the previous election cycle when there were numerous initiative petitions that "embraced multiple issues" and made the ballot too confusing to read); Hearing on S.B. 224 Before the S. Comm. on Legis. Operations and Elections, 73d Leg., at 9 (Nev., April 12, 2005) (statement of Senator William Raggio) (commenting that requiring an initiative petition to contain only a single subject is not a "chilling of the process" and instead works to prevent confusion in the electorate).

As this court explained after the adoption of the single-subject requirement, if the changes in an initiative petition could be brought in two separate petitions, the single-subject requirement demands that they be so brought. *Nevadans for Prop. Rights*, 122 Nev. at 902, 141 P.3d at 1241. This court specifically noted that "single-subject requirements for initiative petitions do not impermissibly limit the people's ability to legislate or amend the constitution, [because] a second subject that might have been included in the first petition can be addressed by creating a second petition." *Id.* Thus, the majority's conclusion that requiring distinct changes be presented in separate initiative petitions would frustrate the people's access to the initiative process directly contradicts our precedent.

Further, the inclusion of two distinct changes in a single initiative petition is the very definition of "logrolling"—i.e., the "signing or voting for a multifaceted petition in order to effect at least one element of change." *Id.* at 918, 141 P.3d at 1251 (Maupin, J., concurring and dissenting). Logrolling is precluded because it forces the electorate to choose between two potentially competing policy goals. *Id.* at 923, 141 P.3d at 1254 (Hardesty, J., concurring and dissenting). Here, it would be easy to bring each of the two proposed changes—open primaries and ranked-choice general election voting—in separate initiatives, which would provide voters with the opportunity to adopt only one if they were so inclined. While the majority claims that bringing the proposed changes in two separate initiatives would limit the effect of ranked-choice voting in the general election, that claim is unsupported. The current closed primary election system does not limit the general election ballot to only two candidates. NRS 293.267(1) requires that the names of minor party candidates and independent candidates appear on the general election ballot, although they do not appear on the ballot for a primary election. *See* NRS 293.1715(1); NRS 293.200(7). Thus, even if the open-primary change was not adopted, more than two candidates could be listed on the general election ballot, providing the electorate with multiple choices to rank. Additionally, the adoption of open primaries without the adoption of ranked-choice voting in the general election would not be problematic. Thus, if these changes were proposed in two separate initiative petitions, the electorate would be empowered to decide whether they liked one or both, instead of being forced to decide whether a change they like is worth tolerating the adoption of a change they do not like.

Lastly, the majority's reliance on *Meyer v. Alaskans for Better Elections*, 465 P.3d 477, 499 (Alaska 2020), is misplaced. That matter concerned an initiative that sought to "(1) replac[e] Alaska's current party-based primary system with an open, nonpartisan primary; (2) establish[ ] ranked-choice voting in general elections; and (3) adopt[ ] new disclosure and disclaimer requirements for independent expenditure groups and their donors." *Id.* at 490. The Alaska court applied Alaska's single-subject test and concluded all three provisions fell under the single subject of election reform. *Id.* at 499. However, Alaska's single-subject standard is much more relaxed than Nevada's standard. Alaska only requires the provisions to be "logically or in popular understanding" germane to one general subject. *Id.* at 484, 498 (internal quotation marks omitted). Nevada requires the provisions to be "functionally related and germane to each other in a way that provides sufficient notice of the general subject." NRS 295.009(2). The Alaska court specifically rejected narrowing its single-subject requirement to require the provisions to be functionally related. *Meyer*, 465 P.3d at 496 (declining an interpretation of the single-subject test which would require subjects to be functionally connected as opposed to "merely . . . germane") (omission in original). Even under the majority's single-subject analysis, the initiative petition considered in *Meyer* would not meet Nevada's single-subject test because its three proposed changes are not functionally related. Thus, *Meyer* is unpersuasive here, and this court is under no obligation to follow it.

Because the BVN Initiative includes more than one subject, I would reverse the district court's decision that it meets Nevada's single-subject requirement.

*The description of effect was inadequate*

I also disagree with the majority's conclusion that the description of effect was adequate. A description of effect "must be a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to reach those goals." *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37, 293 P.3d 874, 876 (2013). The description of effect fails to state what the initiative is designed to achieve. While it discusses the two separate changes proposed, it never states the goal those changes are designed to achieve. A signatory of any initiative petition must understand the initiative's goal before assigning his or her signature to the petition. A signatory to the BVN Initiative could read the description of effect multiple times and still not understand what goal the initiative intends to achieve. This alone renders the description of effect inadequate.

Furthermore, I find the majority's analysis of the description of effect concerning. The majority appears to be relaxing the standard for descriptions of effect because of some preconceived notion that it would be difficult to comply with that standard within the statutory 200-word limit. The brevity of the description of effect does not grant initiative proponents the right to hide the goals of the initiative petition or mislead the public on how the initiative seeks to fulfill those goals. If the majority is concerned with the word-limit for descriptions of effect, that is an issue better addressed by the Legislature. The statute requires descriptions of effect to have no more than 200 words, and many initiative proponents have capably met the standard for descriptions of effect in 200 words or less. NVF's inability to do so was likely due to the initiative petition embracing more than one subject and being too complex to be sufficiently addressed in so

SUPREME COURT
OF
NEVADA

(O) 1947A

7

few words. We cannot relax the standard for what is included in a description of effect merely because an initiative proponent has presented an initiative too complex to be addressed in 200 words or less.

For the reasons stated above, I disagree with the majority's decision. The BVN Initiative fails to comply with the single-subject requirement. Additionally, its description of effect is inadequate. I would reverse and remand this matter to the district court to enter an order enjoining the Secretary of State from placing the BVN Initiative on the ballot.

_____, J.
Cadish

We concur:

_____, J.
Hardesty

_____, J.
Stiglich