140 Nev., Advance Opinion 28

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NEVADANS FOR REPRODUCTIVE FREEDOM, A POLITICAL ACTION COMMITTEE, Appellant, vs. DONNA WASHINGTON, AN INDIVIDUAL; COALITION FOR PARENTS AND CHILDREN, A POLITICAL ACTION COMMITTEE; AND FRANCISCO V. AGUILAR, IN HIS OFFICIAL CAPACITY AS THE NEVADA SECRETARY OF STATE, Respondents. | No. 87681  FILED APR 18 2024 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting injunctive relief preventing the Secretary of State from placing an initiative petition on the ballot. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Reversed.*

Elias Law Group LLP and David R. Fox, Elisabeth C. Frost, and Daniel J. Cohen, Washington, D.C.; Bravo Schrager, LLP, and Bradley S. Schrager and Daniel Bravo, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, and Laena St-Jules, Senior Deputy Attorney General, Carson City,
for Respondent Francisco V. Aguilar, Secretary of State.

Guinasso Law, Ltd., and Jason D. Guinasso, Reno,
for Respondents Donna Washington and Coalition for Parents and Children.

24-13602

Stranch, Jennings, & Garvey, PLLC, and Nathan R. Ring, Las Vegas; Sandler Reiff Lamb Rosenstein & Birkenstock, P.C., and Joseph Sandler, Washington, D.C.,
for Amicus Curiae Ballot Initiative Strategy Center Foundation.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, STIGLICH, J.:

Appellant Nevadans for Reproductive Freedom (NRF) intends to place an initiative petition on the ballot that would establish a constitutional right to reproductive freedom. The initiative petition would grant every individual a right to make their own decisions regarding all matters related to a pregnancy, including prenatal care, childbirth, postpartum care, birth control, vasectomy, tubal ligation, abortion, abortion care, management of a miscarriage, and infertility care. Respondents Donna Washington and Coalition for Parents and Children (collectively Washington) filed a complaint in district court challenging the petition. They alleged that the petition failed to meet statutory and constitutional requirements and sought to enjoin respondent the Secretary of State from placing the initiative on the ballot. Specifically, Washington asserted that the initiative petition violated the single-subject requirement because it considered multiple medical procedures, instead of being limited to only

---

[1]The Honorable Patricia Lee, Justice, voluntarily recused herself from participation in the decision of this matter.

 

pregnancy or abortion. The district court granted the injunction, finding the initiative petition invalid for three reasons: (1) it does not contain a single subject, (2) its description of effect is misleading, and (3) it requires an expenditure of money without raising the necessary revenue.

We conclude the district court erred. First, all the medical procedures considered in the initiative petition concern reproduction. To assert that they could not all be addressed together because they are separate procedures is improper. Each medical procedure relates to human reproduction, and they are germane to each other and the initiative's single subject of establishing a right to reproductive freedom. We further conclude that the description of effect was legally sufficient and the initiative petition does not require an expenditure of funds. Accordingly, we reverse.

*FACTS AND PROCEDURAL HISTORY*

In September 2023, NRF filed its notice of intent to circulate an initiative petition that proposes adding a section to Article 1 of the Nevada Constitution recognizing a person's right to reproductive freedom. Subsection 1 of the initiative describes the right to reproductive freedom as follows:

> Every individual has a fundamental right to reproductive freedom, which entails the right to make and effectuate decisions about all matters relating to pregnancy, including, without limitation, prenatal care, childbirth, postpartum care, birth control, vasectomy, tubal ligation, abortion, abortion care, management of a miscarriage and infertility care. The right of an individual to reproductive freedom shall not be denied, burdened or infringed upon unless justified by a compelling State interest that is achieved by the least restrictive means available.

Subsection 2 permits the State to regulate abortions after fetal viability but prohibits such regulation when, in the professional judgment of an attending provider of health care, an abortion would protect the pregnant individual. Subsections 3 and 5 prohibit the State from penalizing or prosecuting a pregnant individual based on the outcome of a pregnancy or penalizing or prosecuting an individual or entity who assists another person in exercising their right to reproductive freedom. Subsection 4 provides similar protections to health care providers:

> The State shall not penalize, prosecute or otherwise take adverse action against a provider of health care, who is licensed by the State, for acting consistent with the applicable scope of practice and standard of care for performing an abortion upon, providing abortion care to, or providing reproductive care services to an individual who has granted their voluntary consent.

Additionally, subsection 6 states that nothing in the initiative "limits the rights to equality and equal protection."

The initiative includes two definitions. It defines a "compelling state interest" as "an interest which is limited exclusively to the State's interest in protecting the health of an individual who is seeking reproductive health care that is consistent with accepted clinical standards of practice." It also defines "fetal viability" as the point when, in the professional judgment of an attending provider of health care, there is a "significant likelihood" that a fetus could survive outside of the uterus without extraordinary medical measures.

NRF included the following description of effect on the signature pages for the petition:

> If enacted, this initiative would add a new section to Article 1 of the Nevada Constitution establishing a fundamental right to reproductive freedom. This

initiative enables individuals to make and carry out decisions about matters relating to their pregnancies, including prenatal care, childbirth, postpartum care, birth control, vasectomies and tubal ligations, abortion and abortion care, and care for miscarriages and infertility.

If this measure is enacted, the State still may regulate provision of abortion care after fetal viability, except where medically indicated to protect the life or physical or mental health of the pregnant individual.

Under this measure, the State may not penalize, prosecute, or take adverse action against any individual based on the outcome of a pregnancy of the individual, or against any licensed health care provider who acts consistent with the applicable scope and practice of providing reproductive health care services to an individual who has granted their voluntary consent. Neither may the State penalize, prosecute, or take adverse action against any individual or entity for aiding or assisting another individual in the exercise of the rights established by this initiative.

Washington filed the underlying complaint seeking to enjoin the Secretary of State from placing the initiative on the 2024 election ballot. Washington challenged the initiative on three grounds: (1) it violates Nevada's single-subject requirement, (2) the description of effect is misleading and fails to provide essential information, and (3) the initiative requires the expenditure of money but does not provide the necessary funding.[2]

---

[2]The Secretary of State was listed as a defendant but did not file an answer and took no position on the matter at the hearing. Likewise, the Secretary has filed an answering brief on appeal that takes no position.

After a hearing, the district court granted Washington's request for declaratory and injunctive relief, barring the Secretary of State from placing the initiative on the ballot. The court concluded that the initiative embraces a multitude of subjects that are covered under various chapters of the Nevada Revised Statutes. The court also concluded that the description of effect was misleading and omitted important effects of the initiative petition. Lastly, the court concluded that the initiative requires the State to create a board to determine whether a provider of health care acted within the standard of care in providing reproductive care, that creating such a board would require the expenditure of money, and that the initiative does not provide a revenue source for that expenditure. This appeal followed.

## DISCUSSION

The Nevada Constitution gives the people the authority to place an initiative on the ballot to make law directly by proposing legislation and constitutional amendments. That power is broad but subject to some limitations. In particular, an initiative petition must be limited to a single subject, include a legally sufficient description of effect, and provide a revenue source for any required expenditure of funds. When considering whether an initiative petition complies with those requirements, a reviewing court must ensure the people's right to the initiative process is not quelled. *See Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37-38, 293 P.3d 874, 876 (2013) (explaining that a court must construe an initiative petition's compliance with the description of effect requirement in such a way that does not "obstruct, rather than facilitate, the people's right to the initiative process"). Thus, the party challenging an initiative petition bears the burden of demonstrating the initiative is clearly invalid or does not comply with these requirements. *See Las Vegas*

Supreme Court
of
Nevada

(O) 1947A

*Taxpayer Accountability Comm. v. City Council of Las Vegas* (*LVTAC*), 125 Nev. 165, 176, 208 P.3d 429, 436 (2009) (holding that the party challenging ballot measures "bear[s] the burden of demonstrating that the measures are clearly invalid"). Our review is de novo given that the district court resolved the challenge to the underlying initiative petition without any factual disputes. *Helton v. Nev. Voters First PAC*, 138 Nev., Adv. Op. 45, 512 P.3d 309, 313 (2022).

*The initiative petition complies with the single-subject requirement*

NRF asserts that because the initiative contains a single subject, "creating and defining a fundamental right to reproductive freedom," the district court erred when it concluded that the initiative petition violated Nevada's single-subject requirement. We agree.

Under Nevada law, "[e]ach petition for initiative or referendum must . . . [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." NRS 295.009(1). A petition meets this single-subject requirement if its provisions "are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative." NRS 295.009(2).

Applying these provisions, we have stated that the "preliminary inquiry . . . is whether the initiative's parts are 'functionally related' and 'germane' to each other." *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller* (*NPPRI*), 122 Nev. 894, 907, 141 P.3d 1235, 1243 (2006). To answer that question, the court must first determine the initiative's overarching purpose or subject and then determine if each provision is functionally related and germane to that purpose or subject. *See id.* at 907-09, 141 P.3d at 1244-45; *LVTAC*, 125 Nev. at 180, 208 P.3d at 439. In determining an

initiative's purpose or subject, we look to the initiative's textual language and the proponents' arguments. *LVTAC*, 125 Nev. at 180, 208 P.3d at 439.

We recently applied this analysis in *Helton*. 138 Nev., Adv. Op. 45, 512 P.3d 309. That case concerned an initiative petition seeking to implement open primary elections and ranked-choice general elections for specified officeholders. *Id.* at 312-13. We first identified that the initiative's purpose was "the framework by which specified officeholders are presented to voters and elected."[3] *Id.* at 314 (emphasis omitted). We then analyzed the changes proposed—an open primary and ranked-choice general election—and concluded that even though the two changes concerned different steps in the election process, they were functionally related and germane to each other and the initiative's purpose. *Id.* at 314-15. Thus, we concluded the initiative complied with the single-subject requirement. *Id.* at 315.

The initiative petition here has the single subject of establishing a fundamental right to reproductive freedom. All the initiative's provisions functionally relate and are germane to that subject and each other. Subsection 1 establishes and describes the right to reproductive freedom. Subsections 2 through 5 ensure that the right established in subsection 1 cannot be violated by the State. Subsection 6 clarifies that the initiative does not narrow or limit equal protection rights. Lastly, subsection 7 defines terms used within the initiative. Thus,

---

[3]To the extent Washington argues that *Helton* created a new single-subject compliance criteria by requiring an initiative to include a *framework* concerning the subject, instead of addressing the *mechanics* of a subject, we reject this contention. Our discussion of those terms in *Helton* was to help explain why the initiative there did not violate the single-subject requirement.

subsections 2 through 7 all functionally relate to subsection 1 and the creation of a right to reproductive freedom.

The inclusion of enforcement provisions that ensure the State does not violate the newly established reproductive freedom right does not violate the single-subject requirement. We acknowledge that some of the proposed prohibitions against penalties and regulatory allowances contained in subsections 2 through 5 could have been proposed in separate initiative petitions. Nevertheless, that possibility does not preclude a single initiative that presents them together when they are all germane to the creation of a right to reproductive freedom. In *Helton*, we recognized that an initiative petition can propose more than one change and still comply with the single-subject requirement as long as the changes are functionally related and germane to each other and the overall subject of the initiative. 512 P.3d at 315. This is true here, as all the initiative's sections relate to reproduction. Further, even though the medical treatments or conditions discussed in the initiative may be addressed by various NRS chapters, they each concern the subject of reproduction and can be addressed together in a petition addressing that subject.

Washington takes issue with this view of the petition's subject, arguing that characterizing the broad idea of "reproductive freedom" as the petition's single subject results in "logrolling." The term "logrolling" was used by the concurring and dissenting justices in *NPPRI* to describe what the single-subject requirement is intended to prevent. 122 Nev. at 918, 141 P.3d at 1251 (Maupin, J., concurring and dissenting); *id.* at 922, 141 P.3d at 1254 (Hardesty, J., concurring and dissenting). As Justice Hardesty explained, "logrolling" occurs "when two or more completely separate provisions are combined in a petition, one or both of which would not obtain

SUPREME COURT
OF
NEVADA

(O) 1947A

enough votes to pass without the other." *Id.* at 922, 141 P.3d at 1254 (Hardesty, J., concurring and dissenting). In that scenario, an unpopular provision typically is buried in the text of an initiative addressing a more popular provision that the proponent expects will easily be approved by the voters. *Id.* The single-subject requirement thus aims to prevent logrolling by ensuring that the voters' attention is focused on the one subject being advanced, "without creating confusion over what that subject is, and without making them choose between competing policy goals." *Id.* at 923, 141 P.3d at 1254. This court expanded upon that discussion of logrolling in *LVTAC*, stating that logrolling may also occur when an unpopular provision is concealed in a lengthy, complex initiative. 125 Nev. at 176-77, 208 P.3d at 436-37.

We are not convinced this initiative petition involves logrolling. The petition itself is rather short and limited to protecting reproductive rights. Additionally, the initiative petition does not tie a highly attractive proposal to one that may struggle to get votes. Notably, Washington does not identify a popular provision that NRF is using to hide a less popular provision. In fact, the most contentious provision in the petition, abortion, is prominent and clearly identified both in the petition and in the description of effect. We cannot say that NRF is hiding an unpopular provision in a lengthy, complex petition or attaching an unpopular provision to a popular one. Thus, logrolling has not occurred here.

This initiative petition's single subject is the creation of a fundamental right to reproductive freedom. All the petition's provisions are fundamentally related or germane to that single subject. There is no logrolling. We therefore conclude that the district court erred by

determining that the initiative petition did not comply with the single-subject requirement.

*The description of effect is legally sufficient*

Next, NRF challenges the district court's conclusion that the initiative petition's description of effect is defective. NRF asserts that the description of effect is a straightforward, succinct, and nonargumentative summary of the initiative's effect. Thus, NRF argues the description of effect complies with NRS 295.009(1)(b).

NRS 295.009(1)(b) requires each initiative petition to "[s]et forth, in not more than 200 words, a description of the effect of the initiative . . . if the initiative . . . is approved by the voters." Because the description of effect is statutorily required to be no more than 200 words, it "cannot constitutionally be required to delineate every effect that an initiative will have; to conclude otherwise could obstruct, rather than facilitate, the people's right to the initiative process." *Educ. Initiative*, 129 Nev. at 38, 293 P.3d at 876. In sum, the description of effect "must be a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to reach those goals." *Helton*, 138 Nev., Adv. Op. 45, 512 P.3d at 316 (quoting *Educ. Initiative*, 129 Nev. at 37, 293 P.3d at 876).

The district court concluded that the description of effect is legally insufficient. In doing so, the court concluded that the description of effect is "misleading because it fails to mention that the law will bar the State from prosecuting, fining, or regulating any miscarriage or stillbirth"; fails to clarify what provider of health care would make a decision that an abortion is necessary; and does not define the term "medically indicated," which "misleads voters into believing that there is a specific set of criteria to determine when the mother's physical or mental health requires an

abortion." The district court was also concerned that the description of effect does not address the equal protection section.

We disagree with the district court. The description of effect addresses the initiative's goals: to recognize and protect a fundamental right to reproductive freedom. The description of effect also addresses how the initiative intends to reach those goals: by defining what is included in the right to reproductive freedom and limiting the State's regulation and prosecution of reproductive decisions. Although Washington and the district court express concern with the failure to address specific effects of the petition, we reiterate that a description of effect cannot be required to address all possible ramifications of an initiative in the limited 200-word summary. *See Helton*, 138 Nev., Adv. Op. 45, 512 P.3d at 317 ("With so few words in which to explain the effect of an initiative petition, a challenger will always be able to find some ramification of or provision in an initiative petition that the challenger feels is not adequately addressed in the description of effect."). Most of the omitted effects identified by Washington and the district court do not concern the initiative's primary goal. Instead, the identified omissions involve how the initiative may apply in a variety of hypothetical situations, such as whether a prosecution may be permitted after a miscarriage or stillbirth. The court cannot, after the fact, conclude that the description of effect must discuss certain potential issues when the proponents do not allege that the primary goal of the initiative petition was to address those potential issues. *See id.* at 317 (explaining that the sufficiency of the description of effect does not depend "on whether someone else could have written it better"). Because the description of effect for this initiative petition is "a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to

reach those goals," we conclude the description of effect is legally sufficient. *Id.* at 317-18 (internal quotation marks omitted).

*The initiative petition does not require an expenditure of money*

Lastly, NRF argues that the district court erred when it concluded that the initiative violates the Nevada Constitution because it requires an expenditure of money but does not provide a source of revenue. We agree that the initiative does not require an expenditure of money.

Article 19, Section 2 of the Nevada Constitution generally guarantees the people the power to legislate and to amend the Nevada Constitution by initiative petition. That power is limited by Article 19, Section 6, which precludes "the proposal of any statute or statutory amendment which makes an appropriation or otherwise requires the expenditure of money, unless such statute or amendment also imposes a sufficient tax, not prohibited by the Constitution, or otherwise constitutionally provides for raising the necessary revenue." *See also* Nev. Const. art. 19, § 2(1) (stating that the people's power to legislate by initiative petition is "subject to the limitations of Section 6 of this Article"); *Educ. Freedom PAC v. Reid*, 138 Nev., Adv. Op. 47, 512 P.3d 296, 302-03 (2022) (holding that Article 19, Section 6's limitation on the initiative power applies to petitions that propose constitutional changes). Thus, "an initiative that makes an appropriation or requires an expenditure of money is void if it does not also provide for the necessary revenue." *Educ. Freedom*, 138 Nev., Adv. Op. 47, 512 P.3d at 303 (internal quotation marks omitted).

The district court concluded that the initiative requires an expenditure of money to create a board to determine if abortions are performed within the standard of care. In particular, the district court focused on subsection 4 of the initiative, which provides the State cannot "penalize, prosecute or otherwise take adverse action against a provider of

health care, who is licensed by the State, for acting consistent with the applicable scope of practice and standard of care for performing an abortion upon, providing abortion care to, or providing reproductive care services to an individual." The district court reasoned that only a provider of health care can testify as to the standard of care and thus a panel or board would need to be created to evaluate whether an abortion had been provided within the standard of care.

The district court reads too much into subsection 4. The provision limits the State's ability to prosecute a health care provider for providing abortion services or reproductive care that a party has consented to receive. It does not require that such providers be prosecuted if their care falls below the standard of care. Nor does the provision clearly contemplate a new State entity to determine the standard of care or to evaluate whether a provider performed within the standard of care. As the district court's order seemingly recognizes, if a health care provider were prosecuted or sued for substandard care, appropriate expert testimony could be presented to address the applicable standard of care. If a provider's care fell below the standard of care, current laws and procedures for penalizing or prosecuting a health care provider could address such a situation. *See, e.g.,* NRS Chapter 41A (permitting an action for professional negligence when a health care provider's treatment falls below the standard of care, causing damages); NRS Chapter 630 (governing licenses of health care providers and providing procedures for discipline). Further, to the extent the district court construed the initiative as requiring a standard of care to be set as a matter of law, the state government already includes entities that the Legislature could task with adopting such regulations. *See, e.g.,* NRS 442.007(1) (providing that "[t]he State Board of Health shall adopt

regulations establishing standards for perinatal care provided by any provider of health care"); NRS 442.260(1) (providing that the Division of Public and Behavioral Health "shall adopt and enforce regulations governing the conditions under and the methods by which abortions may be performed"). Accordingly, it is not a foregone conclusion that the initiative requires an expenditure of money to create a board to make those determinations. The idea that the initiative requires such an expenditure is speculative, at best.

Washington failed to meet her burden of demonstrating that the initiative petition includes an appropriation or requires the expenditure of money. Washington provided no relevant evidence below, and the fiscal report did not indicate that the initiative petition would require an expenditure of funds. Even at oral argument before this court, Washington acknowledged that any appropriation or expenditure of funds would be merely speculative at this point. Accordingly, we conclude the initiative petition does not violate Article 19, Section 6 of the Nevada Constitution.

### CONCLUSION

The district court erred when it credited Washington's challenge to the initiative petition and enjoined the Secretary of State from placing the measure on the ballot. The initiative petition has a single subject: the establishment of a fundamental right to reproductive freedom. All the provisions of the initiative petition are germane or functionally related to that subject. Additionally, the description of effect is legally sufficient, as it is a straightforward, succinct, and nonargumentative summary of the initiative's goals and how it intends to achieve those goals. Lastly, Washington did not meet her burden of demonstrating that the initiative petition requires an expenditure of money. Accordingly, we

reverse the district court's order enjoining the Secretary of State from placing the initiative petition on the 2024 ballot.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A